616 A.2d 1012

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Curt A. COLLINS.**

Superior Court of Pennsylvania.

Argued March 3, 1992.

Filed Oct. 26, 1992.

Mark D. Greenwald, Asst. Dist. Atty., Franklin, for Com., appellant.

Before DEL SOLE, JOHNSON and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

The Commonwealth of Pennsylvania appeals from an Order of the Court of Common Pleas, Venango County, Criminal Division, granting Curtis Collins a new trial. We reverse and remand.

Curtis Collins, the appellee, was found guilty by a jury of aggravated assault,[1] simple assault[2] and reckless endangerment.[3] The circumstances of the criminal charges are as follows:

The charges against the defendant stemmed from an incident which occurred at approximately 10:15 p.m., on June 30, 1990. Kim Whitten and Lonnie Adams were crossing Elm Street, in Franklin, to visit Whitten's mother, Marlene Kerr. As they crossed the street, a young man threw a brick, which struck Kim Whitten in the back of the head. The man who threw the brick then fled toward 1041 Elm Street, where a group of young men were standing on the steps leading to that house.

At trial, three Commonwealth witnesses, Lonnie Adams, Marlene Kerr, and Sandra Crawford, a neighbor, testified Defendant threw the brick which struck Ms. Whitten. Sandra Crawford, however, was the only eye-witness who testified that she actually saw the brick leave Defendant's hand and strike Ms. Whitten. Five defense witnesses, including Darnell Butler, Jamie Phillips, Keith Lawrence, Clara Collins (the defendant's mother) and the defendant, all testified that Leroy Manuel Stevenson admitted to them that he was the one who threw the brick. In addition, two Commonwealth witnesses, Sergeant Alton Laing and Officer Kevin Lewis, also testified that Leroy Manuel Stevenson admitted to them that he threw the brick.

Trial court opinion, 4/18/92 at 1–2.

Defense counsel filed a motion in arrest of judgment or for a new trial. Counsel averred that Leroy Manuel Stevenson could not be located prior to trial despite diligent efforts, and, in the alternative, trial counsel was ineffective for failing to speak with Mr. Stevenson immediately preceding the trial and requesting a continuance to secure Stevenson's presence at the trial. An evidentiary hearing was held on this matter on January 22, 1991, at which Stevenson appeared; however, he

1. 18 Pa.C.S.A. § 2702(a)(4).
2. 18 Pa.C.S.A. § 2701(a).
3. 18 Pa.C.S.A. § 2705.

invoked his rights under the Fifth Amendment not to incriminate himself when defense counsel inquired whether he threw the brick at the victim. The trial court subsequently refused the motion in arrest of judgment and granted the motion for a new trial.

The only issue raised by the Commonwealth is whether Curtis Collins was denied effective assistance of counsel due to trial counsel's failure to secure and present the testimony of Leroy Manuel Stevenson at trial.

The standard to be applied in reviewing claims of ineffective assistance of counsel is well settled. 'The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim.' *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. *Commonwealth v. ex. rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of the trial is presumptively effective. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985). *Commonwealth v. Weiss,* 530 Pa. 1, 606 A.2d 439, 441–442 (1992).

Relief will be granted on an ineffectiveness claim for counsel's failure to call a witness if the following requirements have been established: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the

witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for defendant at trial; and (5) the absence of the testimony prejudiced defendant so as to deny him a fair trial. *Commonwealth v. Franklin,* 397 Pa.Super. 265, 580 A.2d 25 (1990), *alloc. denied,* 527 Pa. 641, 593 A.2d 415 (1991).

The Commonwealth theorizes that Stevenson was "played" as appellee's assurance of a second trial if defense counsel's trial tactics at the first trial failed. After the jury returned with the verdict on December 20, 1990, appellee provided defense counsel with the telephone number for Stevenson who was at Allekiski Pavilion, a halfway house. The Commonwealth argues that appellee had known the whereabouts of Stevenson since October 18, 1990, two months prior to trial. Stevenson testified at the evidentiary hearing that he had informed appellee by telephone that he was at Allekiski Pavilion in October, and that they had spoken by telephone on one other occasion following the October communication. Appellee testified at the evidentiary hearing that Stevenson telephoned him in October and informed him that he was in a "rehab" place, but that he did not know where the place was located until a week or two before the trial. The Commonwealth suggests that appellee intentionally withheld his knowledge of Stevenson's whereabouts from defense counsel until the guilty verdict was rendered, and then he utilized this information as a "trump card." In fact, the trial court granted a new trial based on defense counsel's testimony at the evidentiary hearing that appellee informed counsel one day before the trial commenced that Stevenson was at Allekiski Pavilion, but counsel failed to continue the case or to make an effort to obtain the telephone number to try to contact Stevenson knowing that his testimony was important to appellee's case.

Further, the Commonwealth submits that Leroy Manuel Stevenson was physically unavailable to testify and was unwilling to cooperate with the defense. Stevenson was also unavailable in the sense that he invoked his right under the Fifth Amendment not to incriminate himself during the evidentiary

hearing. See *Franklin, supra,* (A witness who chooses to invoke his Fifth Amendment right not to testify is "unavailable"). The Commonwealth also argues that Stevenson's testimony would have been cumulative since he invoked his right not to incriminate himself at the evidentiary hearing rather than testify regarding who threw the brick. The Commonwealth contends further that appellee failed to demonstrate prejudice, and the evidence at trial was sufficient to prove appellee guilty beyond a reasonable doubt. Despite the testimony of three defense witnesses that Leroy Manuel Stevenson threw the brick, two defense witnesses who testified that Stevenson admitted throwing the brick and the testimony of Commonwealth witnesses Sergeant Laing and Officer Lewis that

Stevenson told them that he threw the brick, the jury accepted the testimony of three Commonwealth witnesses that appellee threw the brick and found appellee guilty of aggravated assault. The Commonwealth asserts, therefore, that appellee has not met the elements necessary to establish an ineffectiveness claim.

Appellee contends that the Commonwealth successfully used the absence of Stevenson at the trial and Stevenson's statements made to police after the accident to create the impression that the defense theory that Stevenson actually threw the brick was fabricated. Appellee maintains had Stevenson been called as a witness, even if it were simply to claim his Fifth Amendment right, the jury would probably have viewed the defense theory in a more favorable light. However, our supreme court has held, over a convincing dissent by Justice Roberts, that a witness should not be placed on the stand solely for the purpose of having him exercise his privilege against self-incrimination before the jury. *Commonwealth v. Greene,* 445 Pa. 228, 285 A.2d 865 (1971); *Commonwealth v. Watson,* 355 Pa.Super. 160, 512 A.2d 1261 (1986), *appeal denied,* 515 Pa. 579, 527 A.2d 540 (1987). "If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from

any inferences the jury may draw simply from the witness' assertion of the privilege . . ." *Commonwealth v. Bellacchio,* 296 Pa.Super. 468, 442 A.2d 1147, 1150 (1982), *citing United States v. Lacouture,* 495 F.2d 1237, 1240 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974), *quoting United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir.1973). *Greene, supra.*

In *Greene,* our supreme court held that the trial court's refusal to allow a witness for the defense to take the stand was proper where the witness had been indicted for the same crime, and counsel had informed the trial court that the witness had been advised to invoke his Fifth Amendment privilege against self-incrimination. Attempting to distinguish *Greene* from the case at bar, appellee argues that the Commonwealth chose to make use of Stevenson's statements in its case against the defendant; whereas, in *Greene,* the prosecution was not able to use the witness' statement. Moreover, Stevenson was not charged with the assault in this case, but the person sought to be called in *Greene* was a co-defendant. Appellee argues that the Commonwealth opened the door for him to call Stevenson to the witness stand and he should have been permitted to call him even if he only invoked his Fifth Amendment right not to incriminate himself.

Appellee relies upon *Commonwealth v. Sims,* 513 Pa. 366, 521 A.2d 391 (1987), to support his argument that the only method available to effectively counter the Commonwealth's tactics would have been to call Stevenson to the witness stand, and to permit him to exercise his Fifth Amendment right in the presence of the jury. In that case, the defendant was found guilty of murder and sentenced to death. At trial, the prosecution's only eyewitness to the murder, who at one point had been charged with the murder, testified that he saw defendant shoot the victim. The defense theory was that the Commonwealth's eyewitness was actually the murderer. However, the defendant's theory was thwarted since the trial court ruled outside the presence of the jury, that the attorney-client privilege applied and that its assertion by the witness barred the defense from making the requested inquiries either

of him or of his former attorney. The court further ruled that the witness could not be asked any questions even touching upon his assertion of the privilege. The trial court's ruling prevented the jury from knowing what the Commonwealth's eyewitness previously told his attorney about the killing of the victim when he was initially charged with the crime, and it also prevented the jury from knowing that this information was being withheld by the witness.

The principal thrust of Sims' defense was his attempt to shift criminal responsibility to the prosecution's eyewitness, but the defendant's efforts were obstructed by the witness' assertion of a testimonial privilege and the inability of the defense to locate two of his witnesses or to present their written statements as evidence. Our supreme court reversed *Sims* holding that the defendant should have been permitted to ask the prosecution's eyewitness, who was previously charged with the crime, about his communications with his attorney during the time that he was charged with the offense in order to compel the witness to claim his attorney-client privilege in front of the jury where the testimony of the eyewitness was the heart of the prosecution's evidence. The court opined:

Questioning Hilton [prosecuting witness] as to whether he had previously made inconsistent statements with those being offered at trial in support of appellant's guilt was certainly relevant and appropriate. Forcing that witness to invoke the statutory privilege in the presence of the jury in no way undermines the underlying policy supporting that privilege. Once the privilege is recognized and upheld, the privileged communication remains inviolate. However, on the other hand, the invocation of that privilege before the jury could have reasonably provided the basis for that tribunal to question the accusations made by that witness against the accused.

*Sims,* 513 Pa. at 376, 521 A.2d 391, 395.

The supreme court in *Sims* recognized the well-established principle that the prosecution in a criminal case may not call a witness who it believes will refuse to testify on the basis of the

constitutional privilege against self-incrimination [*citing Commonwealth v. Virtu,* 495 Pa. 59, 432 A.2d 198 (1981); *Commonwealth v. Duval,* 453 Pa. 205, 307 A.2d 229 (1973); *Commonwealth v. Terenda,* 451 Pa. 116, 301 A.2d 625 (1973)]. The prosecution was not permitted to use this strategy since this would unfairly prejudice the defendant by the innuendo of guilty by association. *Sims, supra;* see, e.g. *Duval, supra.* The *Sims* court determined that this reasoning was inapplicable where the defendant attempts to cross-examine a witness who has been called by the Commonwealth as the chief accuser against him. The court stated:

> To insulate such a witness from having to invoke his privilege in the jury's presence, as did the trial court in this case, unfairly bolstered the credibility of a witness whose testimony was crucial to the success of the prosecution. There is nothing in the privilege or its purposes which militates against allowing the jury to at least know that a claimant of the privilege, while testifying as a witness, has elected to withhold from the jury's consideration possible previous statements made by him concerning the matter on trial. The communication itself is not revealed nor is the interest of the witness adversely affected thereby.

*Sims,* 513 Pa. at 377, 521 A.2d 391, 396.

The majority in *Sims* found the following observation by Chief Judge Bazelon in his dissent in *Bowles v. United States,* 439 F.2d 536, 543 (D.C.Cir.1970) instructive:

> The differing situations of the defense and prosecution, which we have recognized in other contexts, see, e.g., *McRae v. United States,* 137 U.S.App.D.C. 80, 420 F.2d 1283 (1969), is central to an understanding of the appellant's contention. *Cf.* Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960). The position of a defendant asserting his Sixth Amendment right to bring witnesses before the jury is not analogous to that of a prosecutor attempting to insinuate that a defendant is guilty because his confederates refuse to answer incriminating questions. *See Fletcher [v. United States ],* supra [118 U.S.App.D.C. 137, 332 F.2d 724 (1964)].

This tactic on the prosecutor's part is equivalent to an outright denial of the defendant's Fifth Amendment right to remain silent, and it is unconstitutional to employ a defendant's silence as an element of the proof needed to convict beyond a reasonable doubt. *Fountaine v. California,* 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). *By contrast, when the accused suggests that another person is the culpable party, the other's refusal to testify is merely being used as corroboration.*

*Sims,* 513 Pa. at 376–377, 521 A.2d 391, 396 (emphasis in original text). Cognizant of its earlier holding in *Greene, supra,* that the jury may not draw any inference from a witness' invocation of his constitutional rights whether the inference is favorable to the *prosecution or to the defense,* the *Sims* court nevertheless determined that "[r]egardless of the wisdom of that decision [*Greene* ] (see dissent of Roberts J.), it is not applicable to the instant case because here we are not concerned with a constitutional privilege but rather one that is of statutory origin." *Sims,* 513 Pa. at 378 n. 1, 521 A.2d 391, 396 n. 1. *Cf. Commonwealth v. Pritchard,* 270 Pa.Super. 461, 411 A.2d 810 (1979) (Notwithstanding our view of the soundness of *Greene,* it is controlling and the issue is resolved against the defendant); *see also Commonwealth v. Yabor,* 376 Pa.Super. 356, 546 A.2d 67 (1988) (same).

In *Sims* and the case *sub judice,* both defendants were at a disadvantage because the persons whom they accused of actually committing the crimes with which the defendants had been charged could have invoked a privilege to protect themselves from having to testify in front of the jury.[4] Although the witness in *Sims* did testify, the trial court would not permit the witness to be questioned regarding his confidential communications with his attorney when he had been charged with the same murder as the defendant in *Sims.* The defense in *Sims* was especially handicapped since it was not permitted to compel the witness to invoke the attorney-client privilege in front of the jury. Though the witness, Stevenson, in our case

4. Although Leroy Manuel Stevenson did not appear at the appellee's trial, Stevenson did testify at the evidentiary hearing following the trial and invoked his Fifth Amendment right not to testify.

was not the chief prosecution witness as in *Sims*, the defense was handicapped because the Commonwealth used Stevenson's statements, as testified to by the police officers, in its case against appellee.[5]

Based on our supreme court's *Greene* decision, counsel would not have been permitted to request a continuance or to present Leroy Manuel Stevenson as a witness for the defense because Stevenson would have invoked his privilege against self-incrimination before the jury and *Greene* prohibits such a tactic by the prosecution or the defense. For this reason, even though appellee was in fact prejudiced, he cannot demonstrate the kind of prejudice required to sustain an ineffectiveness claim under the circumstances of this case.[6] While the argument submitted by appellee does have merit, we our constrained to follow *Greene*. It is hoped that our supreme court will have an opportunity to once again review its decision in *Greene* in light of its *Sims* rationale. Unfortunately, until such a time, we as an intermediate appellate court are bound by the pronouncement in *Greene*.

Accordingly, the order granting appellee a new trial is reversed. Conviction reinstated and case remanded for resentencing.

**5.** Direct examination of Officer Kevin Lewis by assistant district attorney Greenwald:
   Q. And what did he [Stevenson] tell you about what Mr. Collins [appellee] told him and what he wanted to tell you?
   A. He stated to us that he wanted to tell us who threw the brick. Sergeant Laing advised him, you know—he stated that he was the one that had thrown the brick. But he stated, you know, he wanted to talk. We then advised him, you know, at that point it was a felony, and he stated, 'Well, I don't want to talk anymore.'
   Q. Okay. And did he tell you anything else that the defendant told him?
   A. He just stated that he had spoken to Mr. Collins and Mr. Collins stated to him that he wasn't taking the rap.
   Trial transcript, 12/19–20/92 at 68–69.

**6.** We note that defense counsel, at the very least, should have requested the trial court to give the jury a neutralizing instruction calculated to reduce the danger that the jury might draw an inference from the absence of Stevenson at the trial. *See Greene*. This is a borderline case and such an instruction might have tipped the scales in appellee's favor. However, this issue has not been raised by appellee.

JOHNSON, J., files a concurring opinion.

DEL SOLE, J., files a dissenting opinion.

JOHNSON, Judge, concurring.

Without disagreeing with much of what is contained in my learned colleague's Opinion, I feel I must concur in the result. The only issue is whether defense trial counsel was ineffective for not securing and calling Leroy Manuel Stevenson as a defense witness at Curt A. Collins' trial.

The burden rests upon Collins to establish ineffectiveness. To establish ineffectiveness for failure to call a witness, Collins must present evidence, *inter alia*, that Stevenson was both (1) available and (2) prepared to cooperate and testify for Collins at trial. *Commonwealth v. Franklin*, 397 Pa.Super. 265, 272, 580 A.2d 25, 29 (1990). At the evidentiary hearing on January 22, 1991, Stevenson was called and testified. However, when asked concerning the only evidence that would have been consistent with Collins' defense at the December 1990 jury trial *and* helpful to Collins, Stevenson invoked the Fifth Amendment and refused to testify.

There was absolutely no evidence submitted by Collins at the evidentiary hearing that Stevenson was either available or prepared to cooperate and testify for the defendant at the earlier trial. Having invoked the Fifth Amendment, it appears obvious that Stevenson was legally "unavailable." *Franklin, supra* at 273, 580 A.2d at 29. Inexplicably, the most distinguished trial judge, the Honorable William E. Breene, does not discuss the witness' unavailability or the total lack of positive evidence that he (Stevenson) would have appeared, at all, at the December 1990 trial, even though the Opinion and Order of Court granting a new trial were filed April 18, 1991, almost three months following the evidentiary hearing.

The reason for the evidentiary hearing is to afford the petitioner—in this case Collins—the opportunity to establish that (1) the witness existed, (2) the witness had been available at time of trial, (3) trial counsel knew or should have known of the witness' existence and the necessity of the witness' testi-

mony, (4) the witness was prepared to cooperate and testify for the defendant at the time of trial, and (5) the absence of the testimony brought forth at the evidentiary hearing so prejudiced defendant as to deny him a fair trial. All five of these elements are conjunctive. A review of the evidentiary hearing transcript of January 22, 1991 leads this writer to conclude that the petitioner failed to establish elements (2), (4), *and* (5) above.

Having failed to meet his burden under the *Franklin* criteria, the claim of ineffectiveness must necessarily fail. I believe the Commonwealth is entitled to reinstatement of the verdict based solely upon the defendant's failure to carry his burden at the evidentiary hearing. I, therefore, would decline to undertake the type of thorough analysis which my esteemed colleague has so ably presented reviewing *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) and *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987).

I am unable to agree with my colleague's conclusion that Collins was in fact prejudiced nor do I believe that defense counsel should have requested a "neutralizing instruction calculated to reduce the danger that the jury might draw an inference from the absence of Stevenson at the trial." The facts of this case as developed through the evidentiary hearing fall short, I believe, of requiring a revisitation of *Commonwealth v. Greene* by our supreme court. Regardless of the tactics claimed to have been used by the prosecution and the defense, the defendant has simply not met his burden of showing that Stevenson would have been an effective witness at the December 1990 trial.

Accordingly, I concur that the order granting a new trial should be reversed and the matter remanded for reinstatement of the verdict and for sentencing.

DEL SOLE, Judge, dissenting:

While I agree with my esteemed colleagues' conclusion that *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) holds that neither the prosecution nor the defense may have a witness take the stand for the purpose of exercising his Fifth

Amendment privilege against self-incrimination, I must respectfully dissent.

The majority opinion states that "... even though appellee was in fact prejudiced, he cannot demonstrate the kind of prejudice required to sustain an ineffectiveness claim under the circumstances of this case". This statement is followed by a footnote in which Judge Ford Elliott comments:

> We note that defense counsel, at the very least, should have requested the trial court to give the jury a neutralizing instruction calculated to reduce the danger that the jury might draw an inference from the absence of Stevenson at the trial. *See Greene.* This is a borderline case and such an instruction might have tipped the scales in appellant's favor. However, this issue has not been raised by appellant.

I cannot agree. In the present case, because of Appellant's counsel's ineffectiveness, Appellant lost his opportunity to request a neutralizing instruction. It is true that we must follow *Greene* because it is the law of the Commonwealth, but, from my review of *Greene,* it is apparent that the majority's memorandum falls short of applying the case as a whole. The majority has overlooked the second half of the *Greene* analysis. *Greene* tells us that in order to extinguish any adverse inferences that the jury may have drawn from Stevenson's absence at trial, Appellant should have had the benefit of a neutralizing instruction. Cognizant of the fact that a jury who has heard the defendant testify that another is responsible for the crime for which he is being tried, may draw a negative inference if the alleged true perpetrator is not called as a witness, the *Greene* court, quoting from *Bowles v. United States,* 439 F.2d 536, 542 (CAD: C 1970) held that, the "court, if requested, should have given [a] 'neutralizing instruction, one calculated to reduce the danger that the jury will in fact draw an inference from the absence of such a witness' ". *Commonwealth v. Greene,* 445 Pa. 228, 285 A.2d 865, 867 (1971).

In *Greene,* like in the present case, the appellant was attempting to prove that the missing witness was, in fact, the

perpetrator of the crime. Unlike the present case however, the missing witness in *Greene* testified in camera. In the case *sub judice*, Appellant's former counsel failed to locate Stevenson prior to trial and therefore there was no opportunity for Appellant to question Stevenson before the trial. As a result, Appellant lost his opportunity to request that the court offer a neutralizing instruction. I therefore conclude that by not locating Stevenson and having him assert his privilege against self incrimination outside of the jury's presence, Appellant's counsel lost Appellant's opportunity to request a neutralizing instruction and thereby rendered ineffective assistance.

Accordingly, I would affirm the order of the trial court granting Appellant a new trial.