688 A.2d 185

**COMMONWEALTH of Pennsylvania**

**v.**

**Dominick "Butch" RIZZO.**

**Appeal of: Mark Bradley REIGHARD, Appellant (at 1183).**

**COMMONWEALTH of Pennsylvania**

**v.**

**Dominick "Butch" RIZZO.**

**Appeal of: James HYLAND, Appellant (at 1184).**

Superior Court of Pennsylvania.

Argued Feb. 7, 1996.

Filed Dec. 16, 1996.

Reargument Denied Feb. 25, 1997.

Norman A. Krumenacker, Jr., Johnstown, for Reighard.

Gary B. Zimmerman, Pittsburgh, for Hyland.

John M. Popilock, Deputy Attorney General, Harrisburg, for Commonwealth, appellee.

Before JOHNSON, FORD ELLIOTT, and HESTER, JJ.

FORD ELLIOTT, Judge.

These appeals arose out of the investigation of the Eighth Statewide Investigating Grand Jury concerning the drug dealing activities of Dominick "Butch" Rizzo. The Grand Jury issued a presentment on March 12, 1993, which found a basis for the initiation of criminal charges. Rizzo was charged with ten counts of delivery of a controlled substance in violation of 35 P.S. § 780–113(a)(30) and two counts of criminal conspiracy to violate the Controlled Substance Drug Device and Cosmetic Act, 18 Pa.C.S. § 903. Both Hyland and Reighard (appellants

herein) testified concerning Rizzo's drug activities. Due to their relation in time and subject matter, we shall address the issues presented by both appellants in this single opinion. The factual background of these appeals is as follows.

On March 18, 1992, appellant James Hyland gave State Police Trooper Kenneth Karas and Deputy Attorney General William Jones a statement concerning the drug activities in which he engaged with Rizzo. On April 16, 1992, Hyland testified before the Investigating Grand Jury regarding this same information. He had not been granted immunity for his testimony. On September 18, 1992, appellant Bradley Reighard testified before the Investigating Grand Jury regarding his drug activities with Dominick Rizzo. Unlike Hyland, Reighard testified pursuant to an order of use immunity.

On January 18, 1995, with Rizzo's trial approaching, the Commonwealth moved for, and the trial court granted, orders of use immunity for the testimony of Hyland and Reighard. The Court of Common Pleas of Somerset County issued the orders because Hyland's and Reighard's reluctance to testify had previously been communicated to the prosecution by their respective counsel. The orders of immunity for both Hyland and Reighard apply prospectively to any later proceedings at which they would testify, including the *Rizzo* trial.

On May 22, 1995, Deputy Attorney General Jones moved the Court of Common Pleas of Somerset County to schedule a pretrial hearing, for the purpose of taking and recording the testimony of Hyland and Reighard for use at Rizzo's trial. Argument was scheduled on the Commonwealth's motion for May 26, 1995.

On May 26, 1995, the court ordered Reighard and Hyland to appear and testify at a hearing later that day, pursuant to Rule 9015, Pa. R.Crim. P., 42 Pa.C.S.A., entitled "Preservation of Testimony After Institution of Criminal Proceedings." The court found that Rule 9015 was an appropriate vehicle by which to convene the hearing, because it found the existing circumstances to be exceptional, that a hearing was required to protect the judicial process and administration of justice,

and necessary to insure a fair trial. The court deemed a hearing was necessary to eliminate the disruption of the trial process which it found would occur if the pre-trial testimony were not taken. The Commonwealth argued that the court should receive the testimony at that time because if it waited until a jury in Rizzo's case was seated to find that Hyland and Reighard would not testify, jeopardy would attach and the prosecution would be frustrated. The court deemed it necessary to hold a hearing to avoid the possibility of a miscarriage of justice. Nonetheless, on May 26th, both men refused to testify.

At the hearing, Reighard was called by the court to testify. (Notes of testimony, Rule 9015 Hearing, 5/26/95 at 4.) Reighard's counsel stated that Reighard was refusing to testify because he feared for his life, having received threats from unknown individuals as a result of the possibility of testifying against Rizzo. (*Id.* at 4–6.) The court asked counsel:

[THE COURT:] From your argument on behalf of the witness, as I understand it, the refusal to testify is not based on Constitutional rights protecting against self-incrimination. Would that be right?

[REIGHARD'S COUNSEL:] No—that's right. Our argument is that the Supreme Court has held that, even though you have a grant of immunity, you are not required to testify if you're in fear of your life and if there is duress present.

(*Id.* at 9.)

Hyland also refused to testify, stating the following:

I believe that the Order granting me immunity has not properly been granted. I've requested through my attorney that the matter be cleared up before I testify under the [sic] immune order.

I've seen deceptive procedures of the State Police and Attorney General's office to accomplish their goals, I know they made a letter that was supposed to be from [another co-conspirator], which they made me take to Dominick Rizzo.

I feel they have lied to me, and I cannot trust what they may do to me, regardless of what I say in my testimony.

*Further, I assert my Fifth Amendment and Article 1, Section 9 rights, and will not testify at this time.* I feel that I have been treated unfairly by the police and the Attorney General's office.

I have been denied my due process rights by the Court to determine whether the immunity granted to me is valid. As a result of this, I refuse to answer any questions at this point. I am not intentionally disobeying the immunity order by the Court. I truly believe that I am entitled under due process to have a hearing to determine whether this immunity order is a valid replacement of my Fifth Amendment and Article 1, Section 9 right against self-incrimination. [THE COURT:] Mr. Hyland, at least the video record of this will probably reflect that you are reading from a document—but certainly unless you concede such, the printed record will not.

\* \* \*

[HYLAND'S COUNSEL:] That's accurate Your Honor. He intends to answer each and every question in the same fashion as he has that first question . . .

(*Id.* at 84–86, emphasis supplied.)

The court adjourned the hearing until May 30, 1995, to allow Hyland and Reighard an opportunity to reconsider their refusals to testify. On May 30, 1995, at the reconvened hearing, each appellant refused to answer the questions posed to them concerning their dealings with Rizzo. Both Reighard and Hyland were held in civil contempt for refusing to answer, until such time that they would appear before the court and respond to the questions previously asked. Both were committed to the Somerset County Jail.

On July 21, 1995, the court issued an opinion detailing its rationale for the May 30th finding of contempt. These timely appeals followed. Appellant Reighard raises a single question on his appeal: whether an immunized witness may properly be incarcerated for contempt as a result of refusing to testify at a

proceeding which was improperly convened under Pa. R.Crim. P. 9015.

Appellant Hyland raises two issues. Similar to Reighard's argument, Hyland has alleged as error the trial court's characterization of his failure to testify as "unavailability," given that he would allegedly be available, subject to a subpoena. He argues that the Rule 9015 hearing was improper. Hyland's second issue is whether the court may grant immunity to a witness who cannot avail himself of the privilege against self incrimination, where he has already waived it and given the same testimony hoped to be gained through the grant of immunity.

█ We turn now to Reighard's argument and Hyland's first argument, which both are based upon the propriety of the hearing held pursuant to Rule 9015. Essentially, appellant Reighard argues that since the hearing at which he stated he would not testify was improperly convened, he was entitled to refuse to testify, and thus the adjudication of contempt as to his refusal is a nullity. In the same vein, appellant Hyland argues that he was not "unavailable" as that term is defined pursuant to Rule 9015, because he was available to testify at trial as a subpoenaed witness, and that a hearing under Rule 9015 was improper. We reject these arguments.

Rule 9015 of the Rules of Criminal Procedure, entitled "Preservation of Testimony After Institution of Criminal Proceedings," does not exclude a proceeding such as the one presently under review. The Rule provides that:

(a) At any time after the institution of a criminal proceeding, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved.

Rule 9015, 42 Pa.C.S.A. A Comment to the Rule explains that: this rule is intended to provide the means by which testimony may be preserved for use at a subsequent stage in the criminal proceedings.....

Although the Rule may be invoked to preserve the testimony of a witness who will be unavailable for trial, it may also be invoked when "due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved." [1] Such language allows the trial court broad discretion concerning the decision to preserve testimony.

Instantly, the trial court stated in its order convening the hearing that it elected to proceed under Rule 9015 to effectuate the interests of justice. The Rules of Criminal Procedure lend support to the trial court's election to hold a hearing pursuant to Rule 9015. For example, a comment to the rules which govern pretrial proceedings makes clear that one of the main goals is to "provide adequate information . . ., expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process. . . ." Pa. R.Crim. P. Rule 305, 42 Pa.C.S.A., section 1.2 Comment. Our research reveals that there has apparently been no recorded challenge to the use of Rule 9015 in any setting.

Despite Reighard's argument that he was available to testify at trial, or amenable to subpoena, it is clear that he had manifested his intention not to testify because he was in fear for his life. We find that the instant case presents a proper exercise of the court's discretion pursuant to Rule 9015. Nothing in Rule 9015 precludes a court from scheduling a hearing, in these exceptional circumstances, to take testimony to further the goal of avoiding a miscarriage of justice. Moreover, we know of no right that a *witness* could otherwise assert as to when or where his testimony is to be taken. This hearing arose in the context of Rizzo's prosecution, and the

---

1. From the text of the Rule, it appears that "may be unavailable," as used in sub-paragraph (a) above, includes situations in which the court has reason to believe that the witness will be unable to testify at trial or other proceeding, such as when the witness is dying, or will be out of the jurisdiction and therefore cannot be effectively served with a subpoena, or may become incompetent to testify for any legally sufficient reason. "Criminal proceeding" is defined in the rules of criminal procedure, as "all actions for the enforcement of the Penal Laws". Pa.R.Crim.P. 3 (Definitions), 42 Pa. C.S.A.

record discloses that Rizzo's counsel did object to the timing of the hearing; he has, however, taken no position on this appeal.

To support his claim regarding Rule 9015, Hyland points to the comment to Rule 9015, which states that unavailable is "intended to include situations ... [where] the witness will be unable to be present or to testify ..., such as when the witness is dying, ... out of the jurisdiction ..., or may become incompetent to testify for any legally sufficient reason." On the basis of *Commonwealth v. Wood,* 432 Pa.Super. 183, 637 A.2d 1335 (1994), Hyland argues that the preceding list from the comment is an exhaustive list defining unavailability which must be strictly construed, and that he does not fit within these parameters. Hyland argues that he is "available" for the Rizzo trial, because none of the situations described in the Comment apply to his refusal to testify, and he is available to be subpoenaed to attend. (Hyland Brief at 14–15.)

Initially, we point out that Hyland did specifically invoke his Fifth Amendment privilege not to testify at the May 26th hearing. The refusal to testify pursuant to a claim of fifth amendment privilege renders an individual "unavailable." *See, e.g., Commonwealth v. Smith,* 436 Pa.Super. 277, 286–87, 647 A.2d 907, 911 (1994) (the "true test of unavailability is whether the prosecution has made a good faith effort to produce the live testimony of the witness and, through no fault of its own, is prevented from doing so");[2] *Commonwealth v. McGrogan,* 523 Pa. 614, 568 A.2d 924 (1990) (a witness is unavailable for purposes of testifying where a witness's concern with self-incrimination is legitimate); *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977) (witness unavailable where he invokes privilege against self-incrimination).

2. In *Smith,* as in this case, the witness was held in contempt prior to the defendant's trial, after the witness expressed his reluctance to testify. The trial court at that point held a hearing to determine the reasons for the witness' refusal, which he indicated was on the basis of the Fifth Amendment privilege against self-incrimination. The Commonwealth offered the witness immunity, but he persisted in refusing to testify. As here, the trial court held the witness in contempt.

Appellants' challenges to the Rule 9015 hearing based upon the assertion that they cannot be held unavailable because they are subject to a subpoena for trial are specious. Each had been served with subpoenas which their respective counsel notified the prosecution and the court they would not honor. (*See* notes of testimony, 5/26/95 at 32, 37.) The trial court found compelling the reasons cited by the Commonwealth; for example, that awaiting Rizzo's trial to determine whether the witnesses would testify would create a miscarriage of justice. Not only would trial be disrupted, but jeopardy would then attach to the prosecution of Rizzo.

In addition, although the challenged hearing was scheduled for the purpose of taking appellants' testimony pursuant to Rule 9015, such did not occur. Rather, appellants each refused to testify and attempted to challenge the validity of the orders granting them immunity. The remainder of the proceedings was focused primarily on the grant of immunity, from which the contempt citations which are the basis of this appeal arose.

There is no provision in the Immunity Act for a challenge to a court's grant of immunity. *See* 42 Pa.C.S.A. § 5947. Despite this fact, courts have entertained challenges to orders granting immunity. *See Commonwealth v. Russell*, 225 Pa.Super. 133, 310 A.2d 296 (1973); *Commonwealth v. Wardrop*, 72 Pa. D. & C.2d 151 (1975). Accordingly, although not identified as such below, we conclude after a careful review of the record that the "Rule 9015 hearing" was *de facto* a hearing regarding the validity of the grant of immunity to appellants. Here, the prosecution requested and obtained orders of immunity after learning that Hyland and Reighard would not testify at Rizzo's trial. At that point, the holding of a hearing was not an abuse of discretion. Whether it occurred pursuant to Rule 9015 or the immunity statute is a distinction without a difference. As the Commonwealth points out, it has an ethical duty not to call as witnesses any individual whom it knows will refuse to testify. *Commonwealth v. Collins*, 420 Pa.Super. 358, 365–366, 616 A.2d 1012, 1015 (1992). (Commonwealth's Hyland Brief at 19–20.) The Commonwealth's failure to ex-

plore appellants' desire not to testify would have been wholly improper.

We conclude that, even assuming *arguendo* that appellants were not "unavailable" for purposes of a hearing pursuant to Rule 9015, a hearing regarding the validity of the orders granting immunity was appropriate at that time, *Smith, supra;* we find no abuse of discretion in the trial court's decision to hold a hearing. Accordingly, appellants' assertions of error in this regard are without merit.

We now turn to appellant Hyland's remaining argument. Hyland questions whether a court may grant immunity to a witness who cannot avail himself of the privilege against self-incrimination, where, as Hyland argues, he has already waived it and testified to the same information hoped to be gained through the grant of immunity, so that that information could incriminate him in the future.

The Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution bestow a privilege against self-incrimination which prevents an individual from giving testimony which may lead to his own prosecution. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995) (also holding that Pennsylvania has followed the decisions of the United States Supreme Court concerning immunity). An individual who invokes the privilege must have a reasonable basis for believing that the testimony to be given will be incriminatory. *Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624 (1983); *Rodgers, supra.*

The Supreme Court has recognized that of equal importance in our system of justice is the "ancient adage that the public has the right to every man's evidence." *Kastigar v. United States,* 406 U.S. 441, 443, n. 5, 92 S.Ct. 1653, 1655, n. 5, 32 L.Ed.2d 212 (1972); *Swinehart,* 541 Pa. at 520–22, 664 A.2d at 967, *citing Kastigar.* To balance the inviolable right of individuals not to incriminate themselves against the right to

"every man's evidence," the concept of immunity evolved. In *Kastigar*, the Supreme Court found that use immunity, as opposed to transactional immunity, which grants a witness complete amnesty from the crimes testified to, is sufficient to protect the privilege against self-incrimination contained within the Fifth Amendment. Use immunity protects against the use of compelled testimony as a source for evidence. *Kastigar*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212. The *Kastigar* Court also outlined the procedure to be utilized in determining when a prosecution's case is based upon evidence obtained through immunized testimony.

The immunization of witnesses has always been a feature of Pennsylvania jurisprudence. *Swinehart*, 541 Pa. at 520–22, 664 A.2d at 967. Pennsylvania has adopted the practice of granting "use immunity" in exchange for the protection bestowed by the Pennsylvania Constitution which an immunized witness is forced to give up when compelled to testify. Use immunity does not, however, totally preclude the prosecution from prosecuting the witness for transgressions which arise from the transaction to which he testified. *Swinehart, supra*. Following *Kastigar*, our supreme court has held that in the event there is a later prosecution of the witness, "the Commonwealth must prove, of record, by the heightened standard of clear and convincing evidence, that the evidence upon which a subsequent prosecution is brought arose *wholly* from independent sources." *Swinehart, supra* at 526, 664 A.2d at 969 (emphasis in original).

The novel issue presented by appellant Hyland is whether immunity is a proper avenue where the independent source will yield exactly the same information as the immunized testimony. The basis of Hyland's argument is that it was improper, albeit impossible, for the court to issue an order compelling his testimony in exchange for immunity, because he had already waived his right against self-incrimination when he gave the same testimony in a grand jury proceeding against Rizzo. Indeed, the record before us establishes that the Commonwealth stipulated that the information proposed to be elicited from Hyland was the same as that used to

support the charges against him. (Notes of testimony, 5/26/95 at 96–99.)

 Appellant Hyland's assertion that he has forever waived his right against self-incrimination by testifying before a grand jury is incorrect. Even where a witness has been convicted of a crime, he still has the right to later refuse to testify concerning the crime for which he was convicted, due to the effect that testimony may have on a collateral proceeding. *Rodgers, supra.* In *Rodgers,* appellant argued that the trial court erred in permitting a witness (Rodgers' accomplice) to invoke the privilege against self-incrimination at Rodgers' trial, the invocation of which caused the witness to be declared "unavailable," and resulted in the admission of his preliminary hearing testimony which incriminated appellant. *Id.* at 452, 372 A.2d at 779.

The court rejected Rodgers' argument, recognizing that the question presented was one of first impression. In *Rodgers,* the court recognized that "the waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in an independent proceeding." *Id.* at 451 n. 6, 372 A.2d at 778 n. 6 (citations omitted). This was so even though the witness had been tried and convicted based on his own culpability, but was in the process of pursuing collateral relief.

 On this basis, we conclude that although Hyland waived his right against self-incrimination before a grand jury, prior to the *Rizzo* trial, he has not forever jettisoned his privilege not to incriminate himself. At the time of the contempt citation, Hyland had been charged with crimes arising from his involvement in drug activity with Dominick Rizzo, but had not yet been tried. Accordingly, he does not stand on the same procedural ground as the witness in *Rodgers.* Nonetheless, we find *Rodgers* to be relevant guidance, in part, for the question Hyland presents. We conclude, therefore, that Hyland did not forever waive his privilege against self-incrimination by virtue of his grand jury testimony. He still had a right to refuse to testify, a "bargaining chip," and

the court's order granting immunity was the foil to, and coextensive with, that right. Accordingly, the trial court's corresponding grant of immunity was not void, as Hyland argues. Prospectively, if and/or when Hyland is tried for charges stemming from his involvement in drug trafficking with Rizzo, the grant of immunity will require the Commonwealth to prove, by a heightened standard of clear and convincing evidence, that the evidence upon which Hyland's prosecution is based arose wholly from independent sources. *Swinehart, supra* at 524–26, 664 A.2d at 969. Hence, contrary to Hyland's protests of a nugatory grant of immunity, he may yet derive some benefit from it. Moreover, we find appellant's protestations to be specious. As set forth above, Hyland did in fact invoke his Fifth Amendment privilege not to testify. However, even theoretically, if Hyland was correct that he was precluded from invoking his privilege, he then can properly be held in contempt for refusing to testify.

The orders adjudicating appellants to be in contempt are affirmed.

JOHNSON, J., filed a dissenting opinion.

JOHNSON, Judge, dissenting.

This case requires us to consider the proper application of Rule 9015 of the Pennsylvania Rules of Criminal Procedure. Because I conclude that the trial court lacked the authority under Rule 9015 to conduct the pre-trial proceeding complained of in this appeal, I must respectfully dissent.

From the transcripts, it is established that a jury had already been selected in the case of *Commonwealth v. Rizzo* before any hearing purportedly under Rule 9015 was convened. Argument/Hearing Transcript, May 26, 1995 (from 9:05 a.m until 11:49 a.m.) at 6; Pretrial Hearing Transcript (P.H.T.), May 30, 1995 (from 8:35 a.m. until 10:32 A.M.) at 30, R.R. at 179. The trial court acknowledged that the jury could be sworn and trial commenced as early as the afternoon of Tuesday, May 30th. P.H.T., *supra*, at 30, R.R. at 179. This occurred immediately after the trial court had adjudicated

Mark Bradley Reighard and James Hyland in contempt and committed both of them to the Somerset County Jail. *Id.* at 13, 26–27, R.R. at 162, 175–76.

In its *ex parte* order entered May 22, 1995, the trial court expressly ruled that it would be considering preservation of Reighard's and Hyland's testimony as allowed by Rule 9015. In its order issued prior to 1:30 P.M. on May 26, 1995, the trial court again expressly stated that the testimony of Reighard and Hyland "will be received pursuant to Pennsylvania Rule of Criminal Procedure 9015 and also generally." We, therefore, must examine Rule 9015 to determine whether the hearings that resulted in Reighard and Hyland being found in contempt were lawfully held.

In pertinent part, the rule provides as follows:

**Rule 9015. Preservation of Testimony After Institution of Criminal Proceedings**

 **1. BY COURT ORDER.**

 (a) At any time after the institution of a criminal proceeding, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved.

 (b) The court shall state on the record the grounds on which the order is based.

 . . . .

 (e) The preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding.

The trial court filed two essentially identical Statements under Pa.R.A.P.1925 on July 21, 1995 (Statements). The only difference was in the name of the witness identified in each appeal. In both, the court stated:

 The Court directed that the testimony be taken and preserved pursuant to Pa.R.Crim.P. 9015, and, alternatively, pursuant to the Court's authority to control trial procedure

and order of proof in order to ensure a fair trial and to eliminate the possibility of a miscarriage of justice. As stated in our Order, the Court considered the taking and preserving of the testimony necessary because of the Court's determination that the interests of justice required preservation in view of the evidence that the witness would be unavailable for trial.

Statements, *supra,* at 2.

With this background, I turn to consideration of Rule 9015. I begin by noting the purpose and construction of the Rules of Criminal Procedure. Pa.R.Crim.P. 2 provides:

### Rule 2. Purpose and Construction

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and as nearly as may be in consonance with the rules of statutory construction.

This Court has observed that the rules of statutory construction are incorporated into the Rules of Criminal Procedure. *Commonwealth v. Hightower,* 438 Pa.Super. 400, 401 n. 1, 652 A.2d 873 n. 1 (1995). The rule of strict and liberal construction requires that all provisions of a penal statute be strictly construed. 1 Pa.C.S. § 1928(b)(1). Here, where the result of the application of Rule 9015 is the incarceration of the witness for contempt, it seems only just that the rule be strictly construed in consonance with the rules of statutory construction. I turn then to the reasonable interpretation of Rule 9015.

I begin by focusing on the plain language of the rule. The rule is titled "Preservation of Testimony After the Institution of Criminal Proceedings"; in paragraph (1)(a) the rule states that "the court may order the taking and preserving of testimony." Pa.R.Crim.P. 9015; *see* 1 Pa.C.S. § 1924 ("The title ... of a statute may be considered in the construction thereof."). The rule provides two circumstances in which the court may take and preserve the testimony of a witness: (1)

when the witness may be unavailable for trial; and (2) when, due to exceptional circumstances, it is in the interests of justice to preserve the witness's testimony. Pa.R.Crim.P. 9015. It seems abundantly clear, based on the plain language of this rule, that the determination of whether a witness is unavailable or whether exceptional circumstances exist is a preliminary question that must be decided *before* the court can order the taking and preservation of testimony under the authority of Rule 9015. The structure of the rule affords no other interpretation.

The problem in this case is that the court ordered the taking and preserving of testimony without making the required preliminary determination. In fact, the record clearly indicates that the court ordered the May 26 hearing for the purpose of determining whether the witnesses would be available at trial. At the argument on May 22, at which the Commonwealth requested this unusual pre-trial proceeding, counsel for the Commonwealth stated, in regard to whether the witnesses would testify at trial, *"there may be nobody, including the witnesses, who at this moment in fact know what they will ultimately do,* which is one of the reasons I suggest[ed] the procedure that I did." Argument Transcript, May 22, 1992, at 14 (emphasis added). Based on this representation by the Commonwealth, without any factual development regarding the availability of the witnesses or the existence of exceptional circumstances, the trial court issued an order under the aegis of Rule 9015, requiring a hearing to determine whether Reighard and Hyland "intend to testify or refuse to testify." Trial Court Order, May 22, 1995. Because the trial court did not make the preliminary determination required by Rule 9015, I conclude that this most unusual pre-trial procedure was not authorized by that rule.

In addition, I also believe that the trial court erred in its interpretation of the phrase "may be unavailable," as used in the rule. The comment to Rule 9015 speaks to the meaning of this phrase:

"May be unavailable," as used in paragraph 1, is intended to include situations in which the court has reason to believe

that the witness will be unable to be present or to testify at trial or other proceeding, such as when a witness is dying, or will be out of the jurisdiction, and therefore cannot be effectively served with a subpoena, or may become incompetent to testify for any legally sufficient reason.

Pa.R.Crim.P. 9015 cmt. While comments by the Supreme Court's Criminal Rules Committee are not binding on the Superior Court, those comments may be considered as effective aids in interpreting the meaning of a rule. *Commonwealth v. Reeb*, 406 Pa.Super. 28, 33, 593 A.2d 853, 856 (1991).

The comment may not have been intended to be all-inclusive in the examples set forth above, but its intent can be readily gleaned from the matters listed. One could scarcely argue that a dying witness, or one out of the jurisdiction and not amenable to subpoena, would not be available to testify at trial. In the same vein, a party who has suffered severe brain damage, thereby rendering the person incapable of verbal communication, might be said to be "unavailable." In the situations enumerated in the comment and in the hypothetical that I have raised here, there might be but one fleeting opportunity to take the testimony of the witness; hence the need to preserve the testimony for use at trial. A different situation is present in this case.

The jury was selected on May 22, 1995, sometime shortly after 10:51 a.m. Argument Transcript, May 22, 1995 (from 10:00 a.m. until 10:51 a.m.) at 1, 32. William A. Jones, Deputy Attorney General, had subpoenaed Reighard on Friday, May 19, 1995, before selection of the jury. *Id.* at 2–3. Trial was scheduled to begin on Tuesday, May 30, 1995. *Id.* at 3. The trial court stated that, although the jury was selected on May 22nd, it would not be sworn until the day the trial started, May 30th. *Id.* On May 22, 1995, the trial court issued an order providing, in part:

IT IS FURTHER ORDERED THAT UPON REQUEST BY THE COMMONWEALTH'S COUNSEL, THE WITNESSES *MARK BRADLEY REIGHARD* AND *JAMES HYLAND* ARE DIRECTED TO APPEAR AT THE HEARING AT 9 O'CLOCK A.M. ON FRIDAY, MAY 26,

1995, IN COURTROOM NO. 1 OF THE SOMERSET COUNTY COURTHOUSE, SOMERSET, PENNSYLVANIA.

Both Reighard and Hyland appeared and took the stand at the May 26, 1995 hearing and at the continued hearing on May 30, 1995, the date set for trial. How then could it be argued that either witness was "unavailable"?

On May 22, 1995, Deputy Attorney General Jones first sought that the swearing of the jury be postponed, but he did not pursue this request when informed that the jury is not normally sworn in Somerset County until the day of trial. *Id.* at 3. Jones then advanced an "idea" which he admitted had only come to him the preceding Friday. *Id.* at 5. He suggested that the court:

> schedule a hearing in open court for both Mr. Reighard and Mr. Hyland to offer testimony under cross-examination by counsel for the defendant. [Jones] will make—I will make available their Grand Jury testimony.
>
> If the witnesses at that point, pre-trial, decide not to testify, we don't have a problem with a Jury that's already been sworn, sitting around, waiting for a trial to go forward; and the Court's powers to compel their testimony or to coerce their testimony through the contempt power would be unfettered in that situation, unlike what I've suggested we're on the road for right now.
>
> On the other hand, if they do elect to testify in that hearing setting, there will then be evidence that is useable in a subsequent Jury trial.
>
> . . . .
>
> That's the request the Commonwealth is making. I recognize it's at least an unusual request, possibly a unique request for this Court. I know it's the first time I've been in a position to make such a request.

*Id.* at 5–6.

Defense counsel, Stanton D. Levenson, understandably declined to accept the Commonwealth's offer. *Id.* at 6. Mr. Levenson observed that the suggested procedure was not

recognized or sanctioned by either the rules of criminal procedure or any case law. I wholeheartedly agree. What the Commonwealth sought to do, and what the trial court unfortunately acceded to, was to hold a trial-before-a-trial at which time the witnesses would be examined by the prosecutor as to those substantive matters to be presented to the jury not five days later! Both of the witnesses were amenable to process and had never failed to be available in this or earlier proceedings involving the same defendant. One of the witnesses was already under subpoena for this very trial, scheduled to begin on Tuesday, May 30. What possible justification could exist for taking these witnesses' testimony only two court days before the scheduled trial?

The Commonwealth's argument in justification for its request is that if the testimony were delayed until after the jury had been sworn, and if the witness(es) refused to testify, jeopardy would have attached and the defendant, Dominick Rizzo, might escape conviction. If the Commonwealth's position is sound, then nothing would prevent the Commonwealth from demanding and securing pre-trial "trials" on any occasion for the purpose of "preserving" testimony which might otherwise be "lost" through a witness exercising a right not to testify.

In support of his bizarre request, the deputy attorney general could cite only to contract law, which counsel conceded might be "a bit foggy" because it came from counsel's law school days. Jones submitted to the trial court:

The contract law recognizes that, under certain circumstances, a party who is about to be aggrieved by being the victim of a broken contract doesn't have to wait until the contract is actually in fact literally broken, that there are certain circumstances where communicated intentions or other signs that the other party intends not to comply with the contract is sufficient for there to be a finding of breach of contract which trigger a number of things: one, the ability of seeking Court intervention to lessen damages; also triggers in the contract law a duty on the part of the aggrieved party to mitigate damages; all of which in the

contract law is intended to lessen the damage from what is about to occur.

And that's what I'm asking, that's what the Commonwealth is asking this Court to do, is to avoid or lessen the damage and fall-out that may flow from what I have reason to anticipate may be a refusal to answer questions.

*Id.* at 15.

It is clear that the only "unavailability" contemplated by the Commonwealth was the *possibility* that either Reighard or Hyland, or both, might decline to testify on May 30, 1995 when the trial had commenced. In my view, this showing is not sufficient to establish that a witness may be "unavailable for trial" within the meaning of Rule 9015. I recognize that in the context of certain exceptions to the hearsay rule we have held that an immunized witness who refuses to testify is "unavailable." *See Commonwealth v. Smith,* 436 Pa.Super. 277, 287, 647 A.2d 907, 911 (1994). I believe that the definition of unavailability which applies in the hearsay context, however, is inapposite in the context of Rule 9015.

Rule 9015 is concerned with the preservation of testimony; the term "unavailable" must be read in light of the rule's purpose. In each of the examples of unavailability that are enumerated in the comment to the rule, there is a witness who, for some reason beyond the court's control, may be *unable* to testify at trial. Thus, Rule 9015 provides a means by which the trial court can take the witness's testimony before the trial and preserve it for later use. Here, the court was faced with a situation where it believed that Reighard and Hyland were going to *refuse* to testify at trial. Trial Court Order, May 26, 1995. If a court believes that a witness will refuse to testify, however, then the court cannot reasonably believe that there exists testimony to be preserved. I conclude, therefore, that the refusal of a witness to testify does not constitute "unavailability" under Rule 9015 because the refusal of a witness to testify leaves no testimony to be preserved.

In addition, I cannot accept the Commonwealth's argument that "exceptional circumstances" are present in this case. The difficulty that I find in this argument is simply that the Commonwealth fears nothing more than the normal exigencies of trial that occur all the time. The desire of the Commonwealth to introduce the testimony of one or more persons facing prosecution into the trial of a third person being prosecuted does not pose "exceptional circumstances." The interests of justice are not implicated every time a potential witness is expected to be uncooperative at some time in the future.

In its Rule 1925 Statement(s), the trial court, without citation to any authority, defends its action based on that court's "authority to control trial procedure and order of proof in order to ensure a fair trial and to eliminate the possibility of a miscarriage of justice." Statement Under Pa.R.A.P.1925 at 2. Trial procedure and order of proof, however, are matters which are controlled *during trial* and *after the jury is sworn.* The trial court does not explain how its attempt to handle a portion of the trial even before the trial begins falls within the court's authority to govern trial procedure and orders of proof. Nor does the court indicate how this procedure promotes "fairness." Moreover, to suggest that the failure of the prosecution's witnesses to testify exactly the way the prosecution wants them to testify will result in a "miscarriage of justice" almost requires that one assume the guilt of Dominick Rizzo, an assumption that neither the trial court nor this Court is free to make on my understanding of constitutional principles.

As appellant Reighard points out in his brief, the result obtained by virtue of the trial court proceeding under Rule 9015 on these facts is absurd. Subsection 1(e) of Rule 9015, *supra,* provides that any testimony taken under the rule "shall not be filed of record until it is offered into evidence at trial or other judicial proceeding." The record certified to this Court did not, in fact, include the very testimony (or lack of testimony) upon which the trial court based its contempt finding! The certified transcript for Argument/Hearing held on Friday, May 26, 1995, from 9:05 a.m. until 11:49 a.m., and from 1:39

p.m. until 1:55 p.m., and from 5:45 p.m. until 5:47 p.m., includes this entry at pages 99–100:

> (WHEREUPON, AT 1:55 P.M., JAMES HYLAND LEFT THE COURTROOM, AND PROCEEDINGS AND TESTIMONY WERE HELD WHICH HAVE BEEN SEPARATELY TRANSCRIBED AND SEALED FROM PUBLIC RECORD, AFTER WHICH THE FOLLOWING PROCEEDINGS WERE HELD.)

> **THE COURT:** This 26th of May, 1995, the further pretrial conference and hearing is continued until 8:30 a.m. on Tuesday, May 30th 1995, at which time within the constraints imposed by this Court, we'll hear further argument or testimony with respect to the contempt issues, with the intention that argument or hearing will not extend beyond the morning hours of Tuesday, May 30th.

> Anything else from counsel?

> **MR JONES:** Nothing for the Commonwealth, Your Honor.

> **THE COURT:** I believe that's all I have, too. Thanks very much.

> **MR. LEVENSON:** Thank you, Your Honor.

— (5:47 P.M.) —

We acknowledge that counsel for Appellant Hyland has included a copy of the Rule 9015 Hearing, May 26, 1995 (from 1:55 p.m. until 5:45 p.m.), in the Reproduced Record. This, however, does not cure the fact that the original transcript had been withheld from this Court and was, therefore, unreviewable. We are limited to considering only those facts which have been duly certified in the record on appeal. Pa.R.A.P.1921; *Possessky v. Diem*, 440 Pa.Super. 387, 393 n. 1, 655 A.2d 1004, 1007 n. 1 (1995); *Commonwealth v. Montalvo*, 434 Pa.Super. 14, 28, 641 A.2d 1176, 1183 (1994). For purposes of appellate review, what is not of record does not exist. *Montalvo, supra*, at 28, 641 A.2d at 1183. Where the Commonwealth has sought to avail itself of a rule which, by its very terms, might hamper review, we should not permit that

circumstance to prevent justice being done. Neither the Commonwealth nor the trial court can withhold a portion of the transcript and, at the same time, place its defense on concepts of a "fair trial" and "justice."

Although the trial court speaks of "evidence that the witness would be unavailable for trial" I find no such evidence to support such an assertion anywhere in the record. The only thing the trial court had at its disposal when the Rule 9015 hearing was commenced on May 26, 1995 was the self-serving statement of the deputy attorney general that the witnesses *might* refuse to testify and that this would amount to a "breach of contract."

My colleagues suggest that the language of Rule 9015, insofar as it permits invocation of the rule when "due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved," allows broad discretion in the trial court concerning the decision to preserve testimony. I vigorously disagree. We are not here concerned with "preserving testimony." The Rule 9015 hearing was on Friday, May 26th. The trial was scheduled to begin on Tuesday, May 30th. The jury had already been selected on May 22nd. The testimony would be preserved for three days when the witnesses were available and in court on May 30th, the day scheduled for trial and for the swearing of the jury?

One last point displays the error in what transpired, and the misuse of this rule. The rule is intended to preserve testimony for trial. On May 30, 1995, after the May 26th hearing, the trial court held the witnesses in contempt and then dismissed the jury. The same trial court that thought it important to preserve the testimony of Reighard and Hyland pursuant to Rule 9015 announced its intention to dismiss the jury on the same afternoon that it found the witnesses in contempt. The transcript reveals:

MR. LEVENSON: Your Honor, I would just inquire as to whether or not the Court intends to make a decision today as to what to do with this particular jury?

THE COURT: I'm glad you brought that up. My intention would be to dismiss the jurors when they come in this afternoon.

P.H.T., May 30, 1995 (from 8:35 A.M. until 10:32 A.M.) at 47.

My colleagues' focus on the reasons advanced by the witnesses for not testifying is misplaced. Reighard and Hyland can neither be required to express their testimony, nor to give reasons for not testifying, until they are properly before the court. That one witness might be in fear of his life, or that another witness chooses to invoke the Fifth Amendment, is irrelevant to the issue presented on this appeal: the necessary cause needed to be demonstrated in order to convene a Rule 9015 proceeding. To argue, as do my colleagues, that the exercise of a constitutional right against self incrimination in a proceeding which has been unlawfully convened somehow renders that proceeding "lawful" and the witness "unavailable" ignores, in my view, basic principles of fundamental due process.

I cannot accept my colleagues' assertion that both witnesses had been served with subpoenas that they would not honor. Maj. Op. at 318. On the contrary, the certified record demonstrates just the opposite. In the Argument/Hearing Transcript, May 26, 1995 (from 9:05 a.m. until 11:49 a.m.), the following appears:

MR. SIMMERING: . . . Mr. Hyland is available. He was served at by a subpoena. He's available. He's here today. He hasn't decided what he's going to do when he's called before a Jury in this case, and the reason he hasn't decided is because he's aware that he may be in a position that he cannot be compelled to testify.

Transcript, *supra*, at 32. Similarly, at the other transcript page cited by my colleagues in the Majority, the following appears:

MS. LAZZARI: If it is merely that Mr. Reighard may refuse to testify at trial and face contempt proceedings, I— that just—that reasoning eludes me. As Attorney Leven-

son stated, that's not an unusual situation. In fact, Pennsylvania has a wealth of case law when that happens at trial.

. . . .

Mr. Reighard has been served a subpoena. He has been advised that the Commonwealth has been advised by his counsel immediately after that subpoena was served that he would appear. He has appeared at every proceeding for the last five years, I would say this is going on, including Grand Jury proceedings without fail. To say that he is unavailable according to the rule would be an error.

*Id.* at 37. I am unable to read either of these citations as indicating that the witnesses would not honor the subpoenas, as my colleagues have suggested.

I agree with counsel's observation that the Commonwealth here was attempting to try their case first by deposition, and then decide whether or not to proceed to trial. And this is borne out by the speed with which the trial court dismissed the jury, while "preserving" the testimony of Reighard and Hyland for a trial that may never occur.

Rule 9015(1)(b) mandates that the court state on the record the grounds on which the order directing the taking of testimony is based. This subsection is intended to prevent precisely the type of miscarriage of justice that occurred here. Because I conclude that the trial court failed to place on the record any grounds sufficient to support a Rule 9015 deposition, and committed fundamental error in proceeding with a Rule 9015 hearing without any evidence to support it, I would reverse the orders of May 30, 1995 that found Reighard and Hyland in contempt and order that both parties be discharged. Since I conclude that there was absolutely no basis for the proceedings held, pretrial, on May 26 and May 30, 1996, I need not consider Appellant Hyland's argument that the trial court erred, on January 18, 1995 in granting use immunity purportedly under 42 Pa.C.S. § 5947.

Based on all of the above, I must respectfully dissent.