**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Donald B. TREAT, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.

Filed March 2, 2004.

Reargument Denied May 7, 2004.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellant.

Michael E. Moyer, Allentown, for appellee.

Before: KLEIN, BENDER and OLSZEWSKI, JJ.

KLEIN, J.

¶ 1 After being charged with harassment[1] following a domestic dispute, Donald B. Treat filed a petition for a writ of *habeas corpus.* At the *habeas corpus* hearing, when the Commonwealth asked the alleged victim what she was doing at the time of the incident, the victim replied, "Well, I plead the 5th. I really don't want to testify." (N.T., 3/19/03 at 5.) Over the Commonwealth's objection, the trial court sustained her claim of privilege and granted *habeas corpus* relief. We reverse.

¶ 2 On appeal, the Commonwealth raises two interrelated issues:

1. Whether the trial court improperly allowed the alleged victim to invoke her Fifth Amendment privilege when what she would say could not possibly incriminate her; and

2. Whether the trial court failed to conduct a proper inquiry into the witness' proposed testimony.

¶ 3 In this as well as a companion case, we have been called on to decide whether the trial court properly allowed a complaining witness in a criminal case to avoid testifying completely based on a claim of the Fifth Amendment privilege. *See Commonwealth v. Kirwan,* 847 A.2d 61, 65–66 (Pa.Super.2003). We have also had to determine whether the trial court employed an adequate procedure.

■ ¶ 4 As we stated in *Kirwan,* "[t]here is no formula for determining when and how the Fifth Amendment privilege can be asserted (nor do we think one should be created). . . ." *Kirwan,* 847 A.2d at 65. We are confident that trial courts can draw on their wealth of experience and fashion procedures appropriate to the practicalities of the case and that will allow the judge to make a sufficiently informed decision. We are likewise confident that lower courts will create a record sufficient to demonstrate the propriety of permitting or denying the privilege at the same time as preserving any Fifth Amendment right.

■ ¶ 5 The relevant parameters of the privilege are clear. The privilege extends not only to statements that by themselves would be evidence that the declarant has committed a crime, but also to assertions that would be "a link in the chain" of evidence needed to convict. *Commonwealth v. Kopicz,* 2003 PA Super 499, ¶ 19, 840 A.2d 342. "An individual who invokes the privilege must have a reasonable basis for believing that the testimony to be given will be incriminatory." *Commonwealth v. Rizzo,* 455 Pa.Super. 311, 688 A.2d 185, 190 (1996), *rev'd on other grounds,* 556 Pa. 10, 726 A.2d 378 (1999).[2]

■ ¶ 6 In addition, a witness may ordinarily only assert the privilege to avoid responding to a particular question. A blanket privilege generally is not permitted. *See Commonwealth v. Tielsch,* 789 A.2d 216, 217 (Pa.Super.2001) ("[I]f questions are posed on cross-examination concerning matters for which Appellant can assert his Fifth Amendment privilege, he can do so at that time."). *But see Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d

---

1. Treat was charged with violating 18 Pa. C.S.A. § 2709(a)(3), which states: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose. . . ."

2. *See also Application of Gault,* 387 U.S. 1, 47–48, 87 S.Ct. 1428, 18 L.Ed.2d 527, (1967) ("[The privilege] protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution.").

624, 627 (1983) (holding blanket privilege properly permitted where record suggested claimant's complicity in crime).[3]

¶ 7 Finally, the trial court must decide for itself whether the privilege exists. "It is for the court to say whether [the witness'] silence is justified." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Unless the privilege clearly does not apply, the trial court should not require the witness to answer.

¶ 8 In this case, according to the affidavit of probable cause attached to the criminal complaint in the certified record, the alleged victim, Lois Shelly, gave a written statement to a state trooper outlining a domestic dispute she had with Treat. Shelly testified at the *habeas corpus* hearing that Treat was her "common-law" husband. (N.T., 3/19/03, at 5.)

¶ 9 Shelly told the trooper that on the morning of the dispute, she and Treat were talking about his 18–year–old girl-friend. She then went to do some laundry, and Treat followed her to the washer, smashed the knob on the washing machine, and unplugged the washer. When Shelly went to walk past him, Treat then grabbed her from behind and slammed her to the basement floor face first. Treat held her there in such a way that she had trouble breathing. Treat rolled Shelly onto her back as she tried repeatedly to get away. The struggle left abrasions on Shelly's elbow. Later in the day, Treat forced Shelly to kiss him, pulled her pants down, and performed oral sex.

¶ 10 After Treat was charged, he filed a petition for a writ of *habeas corpus*. At a

hearing on the petition, the Commonwealth called Shelly to the stand. She initially asserted her Fifth Amendment privilege ambiguously, stating, "I really don't want to testify." After the trial court explained that it was not a matter of wanting to testify but of having to answer questions, Shelly flatly reiterated that she was asserting the privilege. She had counsel present, who clarified during an *in camera* discussion: "[W]e're saying that she does have a privilege," but did not specify the basis of the claim. (N.T., 3/19/03 at 7.)

¶ 11 Defendant Treat's lawyer then asserted that he believed the victim's testimony would potentially subject her to prosecution for false reports, unsworn falsifications to authorities or other charges. (*Id.* at 8.) Although the trial court thought that the possibility that the victim would incriminate herself was "ridiculous" and remarked that it was "tired of this occurring in this courtroom," the trial court sustained her claim of privilege citing the statement of Shelly's counsel that Shelly could incriminate herself. (*Id.* at 8–9.)

¶ 12 We sympathize with the trial court's apparent frustration that in many domestic disputes on Monday the complaining witness wants the death penalty but by Tuesday the alleged victim has moved back into the home. Although the court should shepherd cases along and foster prompt resolutions in all matters, deciding which alleged crimes merit prosecution at all is given to the District Attorney and the courts must not interfere.

¶ 13 And although we reiterate our belief that there is no mandatory procedure for deciding whether the privilege

---

**3.** Cf. *United States v. Mandujano*, 425 U.S. 564, 573, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality) ("[T]he Fifth Amendment does not confer an absolute right to decline to respond in a grand jury inquiry...."); *but see*

*United States v. Thornton*, 733 F.2d 121, 125–26 (D.C.Cir.1984) (stating blanket claim of privilege may be properly sustained in unusual circumstances).

against self-incrimination should be allowed, one acceptable procedure is to hold an *in camera* review. In the usual case, the trial court could take the witness, the witness' counsel and defense counsel (the Commonwealth could not be present for obvious reasons) into chambers. In private, and off the record, the court could review the witness' testimony and make an informed decision about whether the witness has to testify. If the privilege is sustained, the court could even make some discrete on-the-record remarks that would explain why the privilege would be appropriate while avoiding revealing any incriminatory information the court might have obtained. Another option would be for the Commonwealth to grant the witness immunity. That option was not taken in this case.

¶ 14 Here, although the trial court did have an *in camera* discussion with counsel, it was on the record and, more important, no one offered anything to substantiate the claim of privilege. Apparent from the trial court's characterization of the claim as "ridiculous" is its failure to see any reasonable way Shelly could believe she would incriminate herself. On the record as it is presently developed, we likewise see no risk.

¶ 15 Because the trial court reasonably saw no risk of prosecution, at least as things stood, and Shelly did nothing to change the court's opinion, under these circumstances the trial court improperly allowed the privilege. We therefore must vacate the order sustaining the privilege and remand for further proceedings on the *habeas corpus* petition.

¶ 16 Order vacated. Case remanded. Jurisdiction relinquished.