J-S74009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK L. WILLIAMS, | |
| Appellant | No. 2728 EDA 2013 |

Appeal from the PCRA Order Entered September 17, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005614-2009

BEFORE:  BENDER, P.J.E., DONOHUE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 23, 2014**

Appellant, Mark L. Williams, appeals *pro se* from the post-conviction court's September 17, 2013 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we are compelled to vacate the court's order and remand for further proceedings.

In October of 2010, a jury convicted Appellant of first-degree murder and carrying a firearm without a license.  Appellant's convictions stemmed from the September 21, 2009 shooting death of Isaiah McLendon on N. 3rd Street in Darby, Pennsylvania.  On December 7, 2010, Appellant was sentenced to an aggregate term of life imprisonment without the possibility

_____

[*] Retired Senior Judge assigned to the Superior Court.

of parole. He filed a timely notice of appeal and, after this Court affirmed his judgment of sentence on October 11, 2011, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Williams*, 37 A.3d 1227 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 42 A.3d 1060 (Pa. 2012).

On September 24, 2012, Appellant filed a timely *pro se* PCRA petition raising various ineffective assistance of trial counsel claims. PCRA counsel was appointed, but rather than filing an amended petition on Appellant's behalf, counsel filed a petition to withdraw and 'no-merit' letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1998), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). Appellant filed a timely *pro se* "Objection and Response" to counsel's petition to withdraw. On May 29, 2013, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss. Appellant again filed a timely *pro se* response. Nevertheless, on September 17, 2013, the PCRA court issued an order dismissing Appellant's PCRA petition and granting counsel's petition to withdraw.

Appellant filed a timely *pro se* notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In his *pro se* brief to this Court, Appellant sets forth the following four issues (reproduced verbatim), each of which contain numerous sub-parts totaling 18 different claims:

I. Whether PCRA counsel provided ineffective assistance in failing to: a) provide any meaningful participation; b) properly certify the PCRA as required under section 9545(d)(1); c) meet the imposed requirements of Pa.R.Crim.P. 902 in regards to the contents of the petition; d) meet the imposed requirements of Pa.R.Crim.P. 904 and **Turner/Finley**; e) investigate and properly raise defendant's claims of trial counsel's ineffectiveness; f) develop **Brady**[1] claims; and g) develop after-discovered evidence claim?

II. Whether PCRA court committed reversible error of law, abused it's discretion and denied the defendant his state and federal due process rights under the Pennsylvania and United States Constitution in: a) granting PCRA counsel leave to withdraw based upon a legally insufficient no-merit letter; b) conduct an independent review of the record and give it's independent findings why defendant's issues were without merit pursuant to **Turner/Finley** and their progenies; c) grant an evidentiary hearing on trial counsel ineffectiveness claims; and d) grant an evidentiary hearing on the after-discovered evidence?

III. Whether trial counsel provided ineffective assistance in failing to: a) interview/investigate two known eye witnesses; b) interview/investigate [Drug Enforcement Administration (DEA)] Agent Robert Belcher; c) object or raise on direct appeal the court denying compulsory process; d) object or raise on direct appeal the court stating there was "a real reason" why the crime occurred; e) object or raise on direct appeal the court stating that the defendant admitted to committing the crime?

IV. Whether the prosecutor committed misconducts, reversible error of law and denied the defendant his federal due process rights under the United States Constitution in failing to: a) disclose video surveillance footage of where the crime transpired and in failing to make the defense aware of that evidence; and in b) eliciting known false testimony and failing to correct known false testimony?

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

Appellant's Brief at 4.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

In Appellant's first issue, he essentially contends that PCRA counsel acted ineffectively by filing an inadequate petition to withdraw and no-merit

letter.  After careful review, we are compelled to agree with Appellant that PCRA counsel failed to adequately examine, in his ***Turner/Finley*** no-merit letter, two of Appellant's trial counsel ineffectiveness claims.  We will discuss those two ineffectiveness claims first.

Appellant contends that trial counsel was ineffective for failing to object when the trial court denied Appellant "his right to compulsory process" by dismissing two potential defense witnesses.  Appellant's Brief at 42.  Those witnesses, James Shepard and Stephan Fenwick, both invoked their right to remain silent after claiming that their testifying at Appellant's trial would incriminate them.  The PCRA court described the proposed testimony of these defense witnesses as follows:

> At trial, defense counsel expressed his intention to call two witnesses: James [Shepard] and Stephan Fenwick.  [Shepard] was available to testify, but his attorney, Stephen Gilson, Esq., advised him not to do so.  [Shepard] would have attacked the credibility of Jeffrey Mason, the jailhouse snitch [who testified that Appellant made inculpatory statements while incarcerated].  [Shepard] would have testified that he witnessed Mason reviewing paperwork in [Appellant's] cell.  This testimony would allegedly raise the inference that Mason became familiar with [Appellant's] case by reading paperwork, not by hearing [Appellant] admit to the crime.  Stephan Fenwick was to rebut a portion of Gregory Graham's account of his whereabouts on the day and night of the shooting.[2]

---

[2] Gregory Graham was also charged in the murder of McLendon, and entered a plea agreement pursuant to which he testified for the Commonwealth at Appellant's trial.  In Graham's appeal from his judgment of sentence, we described his testimony at Appellant's trial as follows:

*(Footnote Continued Next Page)*

- 5 -

PCRA Court Opinion (PCO), 3/3/14, at 9-10 (unpaginated).

The trial court appointed Timothy Plasenti, Esq., to represent Shepard and Fenwick. On October 19, 2010, Attorney Plasenti informed the court that he consulted with both witnesses and advised each of them to invoke their right to remain silent. Attorney Plasenti was then asked by the court to explain how Shepard's testimony would "tend to incriminate" him. N.T. Trial, 10/19/10, at 7. When Attorney Plasenti began to respond, the Commonwealth interjected, indicating that it was not appropriate for the court to ask such a question, which could "interfere with the attorney/client relationship." **Id.** at 8. Attorney Plasenti then stated that he "would be more comfortable not answering[,]" but nevertheless indicated that Shepard's testimony would be incriminating because "he has an open

*(Footnote Continued)* ────────────

> At [Appellant's] trial, [Graham] testified that he drove [Appellant] to an alley behind [the scene of the crime]. [Appellant] exited the car and told [Graham] to meet him at a Save-A-Lot store. While parked at the nearby Save-A lot store, [Graham] heard gunshots in the distance. Shortly after the shots rang out, [Appellant] appeared at the Save-A-Lot, got into [Graham's] car and said, "I shot that n[*****] and wonder if he's dead." [Graham] then drove [Appellant] to Philadelphia. Later, [Appellant] telephoned [Graham] and solicited his assistance in disposing of the murder weapon. A week or so later, [Graham] retrieved the gun from its hiding place and placed it in his van, which was towed to Virginia and loaded on a Florida-bound train. After arriving in Florida, [Graham] took the gun apart and "spread" it across various locations in Jacksonville, Florida.

***Commonwealth v. Graham***, No. 738 EDA 2011, unpublished memorandum at 2 (Pa. Super. filed February 8, 2012).

- 6 -

criminal matter."  *Id.*  Without requesting any further elaboration from Attorney Plasenti, the court dismissed Shepard as a witness.  *Id.* at 9.

In regard to Fenwick, Attorney Plasenti stated:

[Attorney Plasenti]: Your Honor[,] I spoke at length with Mr. Fenwick about his proposed or potential testimony as a witness in this trial.  I spoke with Mr. Fenwick about information I received from both defense counsel and from the Assistant District Attorney prosecuting this case regarding that testimony and other information received by both of those parties.  And then we talked about[,] and I understand that[,] Mr. Fenwick has an open criminal case here in Delaware County.  Based on those conversations, it was my advice yesterday and it is my advice to Mr. Fenwick today and it is Mr. Fenwick's desire to invoke his Fifth Amendment right not to be compelled to testify in this court case.

*Id.* at 10-11.  After asking Fenwick if counsel's statements were correct, to which Fenwick replied in the affirmative, the court dismissed Fenwick as a witness.  *Id.* at 11.

Appellant claimed in his *pro se* PCRA petition, and reiterates on appeal, that the trial court erred by allowing these witnesses to invoke their privilege against self-incrimination simply because they had open criminal cases pending in the same county.  Appellant maintains that the court should have inquired further into how their testifying at Appellant's trial would incriminate them.  Because the court did not conduct such an inquiry, Appellant maintains that his trial counsel should have objected to the court's dismissal of these witnesses.

In PCRA counsel's **Turner/Finley** no-merit letter, he construed Appellant's claim in the following manner: "Defendant asserts that trial

counsel was ineffective for failing to call Stefan Fenwick and James Shepard to testify on his behalf." No-Merit Letter, 5/6/13, at 15 (unpaginated). Counsel then went on to conclude that counsel was not ineffective for failing to call these witnesses because each witness "invoked his 5th Amendment right not to testify." *Id.*

From our review of Appellant's *pro se* PCRA petition, it is obvious that PCRA counsel misconstrued Appellant's argument. Appellant did not allege that counsel was ineffective for failing to call Shepard and Fenwick; instead, he argued that counsel should have objected to the court's acceptance of these witnesses' invocation of their right to remain silent. PCRA counsel did not address this claim in his **Turner/Finley** no-merit letter, and Appellant expressly challenged that failure in his *pro se* response to counsel's petition to withdraw. **See** "Objection and Response," 5/28/13, at 17-19. On appeal, Appellant reiterates his arguments that (1) trial counsel acted ineffectively regarding the trial court's decision to dismiss these witnesses, and (2) PCRA counsel ineffectively omitted a discussion of this claim from his no-merit letter.

We are compelled to agree with Appellant that PCRA counsel's **Turner/Finley** no-merit letter was inadequate. Counsel clearly

misconstrued Appellant's issue and did not properly analyze the merits thereof.[3]

Moreover, while the PCRA court correctly characterized Appellant's ineffectiveness claim, it nevertheless provided a very cursory analysis thereof. The court stated:

> Although [Appellant] now asserts that this Court "improperly" permitted the witnesses to invoke their rights against self-incrimination, he does not explain why this ruling was improper. This Court can think of no reason. The privilege against self-incrimination is of constitutional force. Both witnesses consulted with counsel before invoking the privilege. Therefore, it is recommended that the Superior Court reject the assertion that this Court erred when it allowed the witnesses to invoke it.

PCO at 10.

Initially, we disagree with the PCRA court that Appellant does not sufficiently explain why the trial court erred in accepting Shepard's and Fenwick's invocation of their right to remain silent. While Appellant's argument may not be particularly eloquent, the essence of his claim is clear:

---

[3] The Commonwealth similarly misinterprets Appellant's argument and concludes it is meritless, stating:

> Neither trial counsel nor PCRA counsel was ineffective for failing to call James Shepard or Stephan Fenwick as a witness. Both men consulted with an independent attorney and on the advice of said attorney elected to assert their Fifth Amendment rights to refrain from testifying. Therefore, neither counsel can be ineffective for failing to call them as witnesses.

Commonwealth's Brief at 18.

the trial court's inquiry was insufficient to determine that these witnesses had a reasonable fear of self-incrimination and, as such, Appellant's trial counsel should have objected to the court's dismissing them.

Moreover, we disagree with the PCRA court that Appellant's claim is clearly meritless. Our Supreme Court has stated:

> It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor. Pa. Const. art. I § 9. **See Washington v. Texas**, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, this right is qualified to the extent of existing testimonial privileges of witnesses, including the privilege against self incrimination. **Id.** at 23, n. 21, 87 S.Ct. at 1925, n. 21.

**Commonwealth v. Allen**, 462 A.2d 624, 627 (Pa. 1983) (emphasis omitted). The Court has also discussed a witness' invocation of his privilege against self-incrimination as follows:

> The standard against which a trial judge must determine whether a witness may properly invoke a claimed Fifth Amendment privilege was set forth in **Commonwealth v. Carrera**, 424 Pa. 551, 227 A.2d 627 (1967).
>
> > When [a witness is called to testify], he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be perfectly clear from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answer demanded cannot possibly have such tendency. (Emphasis [omitted], citations omitted.)
>
> **Id.** at 553-54, 227 A.2d at 629.

- 10 -

If an individual possesses reasonable cause to apprehend danger of prosecution, "it is not necessary that a real danger of prosecution exist to justify the exercise of the privilege against self-incrimination." *Id.* "Moreover, the privilege extends not only to the disclosure of facts which would in themselves establish guilt, but also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established." *Id.* *See Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). "The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence[.]" *Id.* at 487, 71 S.Ct. at 818 (citation omitted). To require the witness to prove the basis of the claim would force the disclosure of the information the Fifth Amendment was designed to protect against. *Id.* at 486, 71 S.Ct. at 818.

*Allen*, 462 A.2d 624, 627 (Pa. 1983).

Here, neither Shepard nor Fenwick was called to the stand and questioned before asserting the privilege against self-incrimination; instead, they asserted "[a] blanket privilege" which "generally is not permitted." *Commonwealth v. Kirwan*, 847 A.2d 61, 65-66 (Pa. Super. 2004) (citations omitted). In *Allen*, our Supreme Court affirmed the trial court's acceptance of a 'blanket privilege,' and found "[a] specific factual inquiry was … unnecessary[,]" where "the testimony of record was sufficient to suggest [the witness'] complicity in the crime." *Allen*, 462 A.2d at 627. Here, however, there is nothing in the record indicating that Shepard or Fenwick was involved in McLendon's murder, and the simple fact that they had 'open cases' also did not suggest how their testimony at Appellant's trial would be incriminating. Therefore, *Allen* supports Appellant's argument that defense counsel should have requested a more specific factual inquiry

- 11 -

to determine if Shepard and Fenwick had reasonable cause to fear prosecution.

We also note that while this Court has declared that "there is no mandatory procedure for deciding whether the privilege against self-incrimination should be allowed," we have held that "one acceptable procedure is to hold an *in camera* review." *Commonwealth v. Treat*, 848 A.2d 147, 149-150 (Pa. Super. 2004).

> In the usual case, the trial court could take the witness, the witness' counsel and defense counsel (the Commonwealth could not be present for obvious reasons) into chambers. In private, and off the record, the court could review the witness' testimony and make an informed decision about whether the witness has to testify. If the privilege is sustained, the court could even make some discrete on-the-record remarks that would explain why the privilege would be appropriate while avoiding revealing any incriminatory information the court might have obtained. Another option would be for the Commonwealth to grant the witness immunity.

*Id.* at 150.

In *Treat*, the defendant was charged in a domestic violence incident against the victim, who sought to invoke her right to remain silent when called to the stand during his trial. *Treat*, 848 A.2d at 149. The court conducted an *in camera* hearing, at which defense counsel stated "that he believed the victim's testimony would potentially subject her to prosecution for false reports, unsworn falsifications to authorities and other charges." *Id.* Despite stating that "the possibility that the victim would incriminate herself was 'ridiculous[,]' … the trial court sustained her claim of privilege[,] citing the statement of [her] counsel that [she] could incriminate herself."

- 12 -

*Id.* This Court ultimately overruled the trial court's decision, emphasizing that "although the trial court did have an *in camera* discussion with counsel, … no one offered anything to substantiate the claim of privilege." *Id.*

The same is true in the present case. Although Shepard and Fenwick had counsel who advised them to assert their right to remain silent because they had 'open cases,' there is nothing in the record indicating how or why Shepard's or Fenwick's testimony would have incriminated them in this, or any other, criminal case. Accordingly, Appellant's claim that defense counsel should have objected to the court's accepting these witnesses' invocation of their right to remain silent has arguable merit. *See also Commonwealth v. Rolon*, 406 A.2d 1039 (Pa. 1979) (finding the trial court erred by accepting witness' invocation of his privilege against self-incrimination where the witness never took the stand, the court did not permit Rolon to establish the line of questions he would have asked the witness, and there was nothing in the record linking the witness to the crime). However, because the PCRA court dismissed this claim without a hearing, we are unable to assess whether counsel had a reasonable basis for his decision not to raise such an objection.

Accordingly, we are compelled to vacate the PCRA court's order denying Appellant's petition and remand for an evidentiary hearing on this particular trial counsel ineffectiveness claim. Additionally, we conclude that the PCRA court erred in allowing PCRA counsel to withdraw where counsel wholly failed to address this issue in his *Turner/Finley* no-merit letter, and

the claim has arguable merit necessitating further examination. Consequently, we direct that Appellant be appointed new PCRA counsel to represent him at the PCRA hearing addressing this issue.

We reach the same conclusion regarding another trial counsel ineffectiveness claim asserted by Appellant. Specifically, Appellant takes issue with trial counsel's failure to object to the following instruction by the trial court, provided at the conclusion of Gregory Graham's testimony:

> The Court: All right. Okay. You may step down. … One of the things that you need to know about witnesses is that one way of challenging their credibility is to demonstrate that they gave what is called prior inconsistent statements and in this case [defense counsel] has given – asked about statements that this witness[,] Mr. Graham[,] gave to Detective Pitts. One of the statements was did you tell Detective Pitts that the decedent[,] Isaiah McLendon[,] was a drug dealer or was involved in drugs and he may have said that to Detective Pitts and **it was obviously inconsistent because he knew the real reason why this homicide occurred**. There's no evidence in this case that Isaiah McLendon was involved in dealing drugs and I want to make that clear to you. The reason for that testimony was not to indicate that the decedent was involved in drug dealing, but to show the inconsistent statements of the witness. Okay.

N.T. Trial, 10/15/10, at 145. Appellant claims that this instruction was prejudicial because it encouraged the jury to disbelieve Graham's initial statement to police, in which he did *not* implicate Appellant in the murder, and to instead believe Graham's trial testimony that Appellant shot McLendon. Appellant argues that if defense counsel had objected to this instruction, "the court would have corrected it's [*sic*] error or granted a mistrial." Appellant's Brief at 52.

- 14 -

Appellant clearly cited (and quoted) in his *pro se* PCRA petition the above-stated instruction by the trial court. *See* PCRA Petition, 9/24/12, at 23. Nevertheless, in PCRA counsel's **Turner/Finley** no-merit letter, counsel only reviewed the court's *closing* jury instruction (provided on October 20, 2010) and concluded that "nothing in the transcripts of the jury charge … indicate that the trial court told the jury that there was a 'real reason' that McLendon was killed and Gregory Graham knew that reason." No-Merit Letter at 14 (unpaginated). In other words, PCRA counsel did not review the comments proffered by the trial court on October 15, 2010, following Graham's testimony. Appellant objected to PCRA counsel's examination of this issue in his *pro se* response to counsel's no-merit letter. *See* "Objection and Response," 5/28/13, at 9. Because our review of Appellant's *pro se* PCRA petition confirms that he clearly identified, and cited to, the court's above-quoted comment, we agree with Appellant that PCRA counsel failed to properly review this issue in his **Turner/Finley** no-merit letter.

It also appears that the PCRA court did not adequately examine Appellant's petition and the portion of the record cited therein. Instead, the court adopted an analysis nearly identical to that proffered by PCRA counsel in his no-merit letter. Namely, the court presumed Appellant was referring to the jury instruction the trial court provided before the jury retired to deliberate. *See* PCO at 8-9. After assessing that portion of the record, the PCRA court stated that,

- 15 -

the jury instructions in this case, taken as a whole, were clear and had no tendency to mislead the jury. [The trial court] instructed the jury regarding Gregory Graham. [The trial court] also instructed the jury regarding motive. The charge did not suggest that the jury was told that there was a "real reason" that the victim was killed and that Gregory Graham knew that reason. [Appellant's] argument is without merit.

*Id.* at 9.

In sum, it is apparent from our review of the record that PCRA counsel and the court both failed to properly address Appellant's claim of trial counsel's ineffectiveness. Accordingly, because we are remanding for an evidentiary hearing regarding Appellant's first ineffectiveness claim, discussed *supra*, we direct that PCRA court permit Appellant to further develop the instant ineffectiveness claim at that hearing, as well.

Appellant raises various other claims, which, for the reasons stated below, we conclude are either meritless or waived. Accordingly, these issues need not be addressed on remand.

First, Appellant argues that trial counsel was ineffective for failing to investigate "two known [eyewitnesses,]" Melvin Gross and Richard Gardner." Appellant's Brief at 32. The PCRA court points out that "[t]he name 'Richard Gardner' surfaced for the first time in [Appellant's] Statement of [Errors] Complained of on Appeal." PCO at 11 (unpaginated). Appellant did not raise in his *pro se* PCRA petition any issue regarding trial counsel's ineffectiveness for failing to investigate Richard Gardner. We also see no mention of Gardner in Appellant's *pro se* response to PCRA counsel's petition to withdraw or in his response to the PCRA court's Rule 907 notice of its

intent to dismiss. Thus, Appellant's ineffectiveness claim regarding Richard Gardner is waived. *See Commonwealth v. Washington*, 927 A.2d 586, 601 (Pa. 2007) ("Any claim not raised in the PCRA petition is waived and not cognizable on appeal.") (citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

However, Appellant did argue in his *pro se* PCRA petition that trial counsel ineffectively failed to investigate Marvin Gross, thus preserving this assertion for our review. Appellant contends that trial counsel should have investigated Mr. Gross (and, presumably, called him to the stand at trial) because Mr. Gross was an eyewitness to the shooting and his description of what occurred was "somewhat different" than the testimony of the Commonwealth's eyewitness, Andrea Ebo. *See* Appellant's Brief at 34. Appellant does not elaborate on how Mr. Gross' account of the shooting differed from Ms. Ebo's.

The PCRA court concluded that Mr. Gross would have provided a description of the shooter that was *consistent* with Ms. Ebo's description. *See* No-Merit Letter, 5/6/13, at 12; PCO at 11 (unpaginated). The court explained:

> [Mr.] Gross stated that he saw a black male wearing a black or gray hoodie and red backpack shoot the victim. This account is consistent with that of Andrea Ebo, who testified that the shooter was a dark-skinned African-American man of medium height wearing a black hoodie.

PCO at 11. Thus, the PCRA court reasoned that "[Mr.] Gross'[] testimony would have been of little assistance to [Appellant]." *Id.* Appellant's

undeveloped argument does not convince us that the court's conclusion was erroneous. Thus, this claim of trial counsel's ineffectiveness is meritless.

Appellant also argues that trial counsel was ineffective for failing to investigate DEA Agent Belcher, who "could possibly have [had] evidence favorable to the defense…." Appellant's Brief at 36. Essentially, Appellant claims that Agent Belcher must have possessed video surveillance footage of the murder based on the agent's testimony that he had various cameras set up in the area of the shooting, and also because a fellow inmate informed Appellant that the agent had surveillance cameras in the area of N. 3rd Street. *See* Appellant's Brief at 37-38. Appellant maintains that trial counsel ineffectively failed to investigate whether Agent Belcher possessed such video surveillance evidence. However, Appellant did not raise this claim in his *pro se* PCRA petition. Accordingly, he has waived his argument that trial counsel was ineffective for failing to investigate Agent Belcher. *See Washington*, 927 A.2d at 601.

Appellant also maintains that trial counsel was ineffective for not objecting to the trial court's jury instruction "that [Appellant] admitted to committing the crime." Appellant's Brief at 55. Specifically, the court stated:

> [The Court]: **There is also evidence that the Defendant made an admission that he was the shooter to the police.** Now what I am about to tell you about that admission and only that admission, because if you find that the Defendant made admissions to other people other than police officers you should evaluate that testimony in the ordinary way. But when a Defendant makes an admission of guilt to a police officer, you

> have to look at that admission in a very specific way. **We are talking about Officer Pitts's testimony that the Defendant walked into the room after he was released from the cell and stated that he was the shooter, that he did it.** This is what we are talking about. You may not consider that statement as evidence unless you find that he made the statement voluntarily.

N.T. Trial, 10/20/10, at 58-59 (emphasis added).

Appellant argues that defense counsel should have objected to this instruction because there was no evidence that Appellant admitted to the shooting. However, Detective Brian Pitts testified that Appellant made the following statement to him: "Listen, this is what I'm going to tell you, I did it. It was me. Nobody knows the true facts. Nobody's going to identify me. I want to tell you…." N.T. Trial, 10/15/10, at 187. We conclude that Detective Pitts' testimony that Appellant stated to him, "I did it[,]" was sufficient to justify the court's jury instruction regarding an admission by Appellant. Accordingly, we see no error in trial counsel's failure to object to this instruction.

In addition to his various claims of trial counsel's ineffectiveness, Appellant also avers that the Commonwealth committed a *Brady* violation by failing to turn over video surveillance footage of the street on which the murder occurred. Appellant claims that such footage was in the possession of Agent Belcher. Not only is this claim waived because it was not raised in Appellant's *pro se* petition, but Appellant's contention that such video footage exists is purely speculative. Moreover, in support of his contention that Agent Belcher possessed this footage, Appellant cites portions of his

trial testimony; clearly, if we accept Appellant's argument that the agent's testimony proves he possesses video footage of the murder, then Appellant became aware of this fact at the time of trial and could have asserted this purported **Brady** violation on direct appeal. For these reasons, Appellant's claim is waived. 42 Pa.C.S. § 9543(a)(3) (stating that to be eligible for relief, a petitioner must prove that "[t]he allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (directing that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding").

Appellant also avers that the Commonwealth elicited false testimony from witnesses, and/or knowingly permitted witnesses to make untrue statements on the stand. Appellant does not frame his argument as a claim of trial/appellate counsel ineffectiveness, and he does not discuss why this assertion could not have been raised on direct appeal. Accordingly, it is waived. **See** 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(b).

Lastly, we will address Appellant's assertions that PCRA counsel acted ineffectively by filing an inadequate **Turner/Finley** no-merit letter, and that the PCRA court erred in granting counsel's petition to withdraw. As discussed herein, it is apparent that PCRA counsel failed to properly assess two of Appellant's trial counsel ineffectiveness issues, and at least one of those issues has arguable merit. Therefore, we are compelled to vacate the PCRA court's order denying Appellant's petition and remand for the

appointment of new PCRA counsel, who shall be permitted to file an amended petition on Appellant's behalf. *See Commonwealth v. Massina*, 2013 WL 4399018, at *1 (Pa. Super. 2013). We also direct that the PCRA court conduct an evidentiary hearing on the following two claims: (1) trial counsel was ineffective for failing to object to the trial court's accepting Shepard's and Fenwick's invocation of their right to remain silent, and (2) trial counsel was ineffective for failing to object when the trial court instructed the jury that Graham knew the 'real reason' that this murder occurred. The PCRA court may also address at the hearing any other issues raised in PCRA counsel's amended petition that warrant further review.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/23/2014</u>