J-S81027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK L. WILLIAMS | |
| Appellant | No. 62 EDA 2016 |

Appeal from the PCRA Order January 4, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005614-2009

BEFORE: BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:               **FILED MARCH 01, 2017**

Mark L. Williams appeals, *pro se*, from the January 4, 2016 order denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-45.[1] We affirm.

On September 22, 2009, Williams was arrested and charged with the murder of Isaiah McLendon, who was shot multiple times on the sidewalk at 20 North Third Street in Darby Borough. At Williams' trial, Gregory Graham

---

[*] Former Justice specially assigned to the Superior Court.

[1] On December 23, 2015, Williams prematurely filed a *pro se* notice of appeal, before the PCRA court had entered an order disposing of his petition. The PCRA court entered its order denying the petition on January 4, 2016. Therefore, we will treat Williams' appeal as timely filed from the date of that order. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

testified that Williams had murdered McClendon and that Graham had participated in the murder.

> [Graham] testified that he drove [Williams] to an alley behind [the scene of the crime]. [Williams] exited the car and told [Graham] to meet him at a Save-A-Lot store. While parked at the nearby Save-A[-L]ot store, [Graham] heard gunshots in the distance. Shortly after the shots rang out, [Williams] appeared at the Save-A-Lot, got into [Graham's] car and said, "I shot that n[*****] and wonder if he's dead." [Graham] then drove [Williams] to Philadelphia. Later, [Williams] telephoned [Graham] and solicited his assistance in disposing of the murder weapon.

*Commonwealth v. Williams*, No. 2728 EDA 2013, unpublished mem. at 5 n.2 (Pa.Super. filed Dec. 23, 2014) (quoting *Commonwealth v. Graham*, No. 738 EDA 2011, unpublished mem. at 2 (Pa.Super. filed Feb. 8, 2012)) (some alterations in original).[2]

The PCRA court set forth additional facts relevant to this appeal as follows:

> At trial, defense counsel expressed his intention to call two witnesses, James Shepard and Stefan Fenwick. Shepard was available to testify, but his attorney, Stephen Gilson, Esq., advised him not to do so. [Williams] proposed to call Shepard to impugn the credibility of Jeffrey Mason, the jailhouse snitch. [Williams] advised his counsel that Shepard might be called to testify that he witnessed Mason reviewing paperwork in [Williams'] cell. If Shepard did, indeed, so testify, this evidence may have raised the inference that Mason became familiar with [Williams'] case by reading paperwork, not by hearing

---

[2] Graham was also charged in McLendon's murder but entered a plea agreement in which he agreed to testify for the Commonwealth at Williams' trial. Graham pled guilty to third-degree murder and conspiracy to commit aggravated assault.

[Williams] actually admit to the crime. Stefan Fenwick could be called to the stand to give evidence that may have rebutted a portion of Gregory Graham's account of his whereabouts on the day and night of the shooting. Both Shepard and Fenwick declined to testify.

On October 19, 2010, Timothy Possenti, Esq. was appointed to represent these two reluctant witnesses. After consultation, he advised that each invoke his privilege against self-incrimination.

Opinion, 4/21/16, at 7 ("1925(a) Op.") (citations omitted). Thereafter, defense counsel stated that in light of their invocation of the privilege, he would not call either Shepard or Fenwick to testify. N.T., 10/19/10, at 6, 11. The trial court then dismissed both witnesses. *Id.* at 9, 11.

On October 20, 2010, the jury convicted Williams of first-degree murder and carrying a firearm without a license.[3] On December 7, 2010, the trial court sentenced Williams to an aggregate term of life imprisonment without the possibility of parole. Williams timely appealed to this Court, which affirmed his judgment of sentence on October 11, 2011. The Pennsylvania Supreme Court denied Williams' petition for allowance of appeal on April 30, 2012.

On September 24, 2012, Williams filed a timely *pro se* PCRA petition, alleging several claims of trial counsel's ineffectiveness. The PCRA court appointed counsel, who filed a ***Turner/Finley***[4] "no-merit" letter and a

---

[3] 18 Pa.C.S. §§ 2502(a) and 6106(a)(1), respectively.

[4] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

motion to withdraw from representation on May 6, 2013. Williams filed a *pro se* response to the no-merit letter on May 28, 2013. On May 29, 2013, the PCRA court issued notice of its intent to dismiss Williams' petition, to which Williams filed a *pro se* response. On September 17, 2013, the PCRA court dismissed Williams' PCRA petition and granted counsel's motion to withdraw.

Williams timely appealed to this Court. On December 23, 2014, this Court vacated the PCRA court's order and remanded for an evidentiary hearing on two of Williams' ineffectiveness claims: (1) whether trial counsel was ineffective for failing to object to the trial court's acceptance of Shepard's and Fenwick's assertions of the Fifth Amendment privilege against self-incrimination; and (2) whether trial counsel was ineffective for failing to object to the trial court's jury instruction regarding Graham's statement that he "knew the real reason" for McLendon's murder. **Williams**, No. 2728 EDA 2013, unpublished mem. at 21.

Following remand and the appointment of new counsel, Williams filed an amended PCRA petition. The PCRA court held a hearing on December 9, 2015, limited to the two issues identified in this Court's prior memorandum. At the conclusion of the hearing, Williams expressed his desire to waive counsel and proceed *pro se* on appeal. The trial court conducted a **Grazier**[5] colloquy and granted Williams' request to proceed *pro se*. On January 4,

---

[5] **Commonwealth v. Grazier**, 713 A.2d 31 (Pa. 1998).

2016, the PCRA court denied Williams' petition, concluding that trial counsel was not ineffective.

On appeal, Williams raises the following issues:

1. THE PCRA COURT COMMITTED REVERSIBLE ERROR OF LAW, ABUSED ITS DISCRETION, AND DENIED [WILLIAMS] HIS STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS; SPECIFICALLY WHERE THE COURT: a) ERRONEOUSLY DENIED [WILLIAMS'] [PCRA] CLAIM OF TRIAL COUNSEL'S CONSTITUTIONALLY DEFICIENT AND PREJUDICIAL INEFFECTIVE ASSISTANCE CONCERNING COUNSEL'S FAILURE TO PURSUE COMPULSORY PROCESS AT TRIAL; b) ERRONEOUSLY DENIED [WILLIAMS'] [PCRA] CLAIM OF TRIAL COUNSEL'S CONSTITUTIONALLY DEFICIENT AND PREJUDICIAL INEFFECTIVE ASSISTANCE CONCERNING COUNSEL'S FAILURE TO OBJECT TO THE COURT'S IMPROPER INSTRUCTION.

2. PCRA COUNSEL PROVIDED INEFFECTIVE ASSISTANCE VIOLATING [WILLIAMS'] STATE PROCEDURAL RIGHTS AND [FEDERAL] CONSTITUTIONAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT; SPECIFICALLY WHERE COUNSEL; a) FAILED TO TIMEL[Y] RAISE AS REQUESTED BY [WILLIAMS] FIVE (5) MERITORIOUS CLAIMS FOR RELIEF IN HIS AMENDED PCRA PETITION CAUSING APPELLANT'S CLAIMS TO BE PROCEDURALLY DEFAULTED AND BARRING THOSE CLAIMS FROM HABEAS CORPUS REVIEW.

Williams' Br. at 4.

Our review of an order denying PCRA relief is limited to determining "whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Melendez–Negron***, 123 A.3d 1087, 1090 (Pa.Super. 2015). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." ***Id.***

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must show that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable, strategic basis for his or her act or omission; and (3) but for counsel's act or omission, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999). Counsel is presumed to be effective, and the petitioner has the burden of proving each of the three prongs by a preponderance of the evidence. *Commonwealth v. Steckley*, 128 A.3d 826, 831 (Pa.Super. 2015), *app. denied*, 140 A.3d 13 (Pa. 2016).

First, Williams asserts that trial counsel was ineffective for failing to object when the trial court accepted both Fenwick's and Shepard's invocations of the Fifth Amendment privilege against self-incrimination at trial.

The Fifth Amendment to the United States Constitution affords witnesses the privilege against answering official questions if they reasonably believe the answers may incriminate them in subsequent proceedings. *Commonwealth v. Brown*, 26 A.3d 485, 494 (Pa.Super. 2011). The trial court is in the best position to determine whether the Fifth Amendment privilege applies. *See Commonwealth v. Treat*, 848 A.2d 147, 148 (Pa.Super. 2004).

Our Court has explained the standard for evaluating a witness's invocation of the Fifth Amendment privilege as follows:

The relevant parameters of the privilege are clear. The privilege extends not only to statements that by themselves would be evidence that the declarant has committed a crime, but also to assertions that would be "a link in the chain" of evidence needed to convict. "An individual who invokes the privilege must have a reasonable basis for believing that the testimony to be given will be incriminatory."

*Id.* (citations omitted). "Unless the privilege clearly does not apply, the trial court should not require the witness to answer." *Id.* at 149. "[A]lthough . . . there is no mandatory procedure for deciding whether the privilege against self-incrimination should be allowed, one acceptable procedure is [for the trial court] to hold an *in camera* review" of the witness's proposed testimony. *Id.* at 149-50.

On remand, the PCRA court conducted an *in camera*, on-the-record inquiry to determine whether Fenwick's assertion of the Fifth Amendment privilege was justified. The PCRA court met with Williams' PCRA counsel and trial counsel, Fenwick, and Fenwick's counsel. After the *in camera* hearing, the PCRA court determined that Fenwick had a reasonable basis for believing that his proposed testimony would be incriminatory:

> [T]he evidence showed that Fenwick asserted his Fifth Amendment privilege . . . because he was awaiting his own trial on charges of criminal attempt to commit murder, aggravated assault and related crimes arising out of another shooting only a few feet from the spot at which Isaiah McLendon was shot. Fenwick and Williams were both members of a violent drug dealing gang known as the "Third Street Boys" that operated out of Darby Borough. According to a federal indictment entered into evidence, the gang used the house located at 20 N. 3rd Street as a stash house for cocaine and marijuana. If called to testify on behalf of Williams, the prosecution might [have been] able to elicit testimony from Fenwick on cross-examination

- 7 -

concerning his distribution of drugs, his use of the stash house, and his alleged shooting of another victim at the location of Isaiah McLendon's death. It is clear to this Court that Fenwick had a very reasonable fear of self-incrimination in other criminal proceedings pending against him.

1925(a) Op. at 8. The record supports the PCRA court's findings. Therefore, we conclude that Williams' ineffectiveness claim relating to Fenwick's assertion of the Fifth Amendment privilege lacks arguable merit.[6]

With regard to Shepard, the PCRA court was unable to determine whether his invocation of the Fifth Amendment privilege was justified because Shepard failed to appear at the PCRA hearing[7] and Williams' trial counsel could not recall the substance of his conversations with Shepard at the time of trial. *Id.*; *see* N.T., 12/9/15, at 49-54. However, even if Williams could establish that the trial court erred in accepting Shepard's invocation of the Fifth Amendment privilege, he failed to prove that had Shepard testified, there is a reasonable probability that the outcome of the trial would have been different. As the PCRA court explained:

> Even if this Court had ordered [Shepard] to take the stand, the defense cannot show that the absence of [his] testimony was so prejudicial that [Williams] was denied a fair trial. Quite to the contrary, [Shepard's] proposed testimony did not directly contradict any aspect of the

---

[6] We need not analyze the remaining two ineffectiveness prongs because counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Commonwealth v. Bryant*, 855 A.2d 726, 742 (Pa. 2004).

[7] The record reflects that counsel for both Williams and the Commonwealth were unable to locate Shepard at the time of the PCRA hearing. N.T., 12/9/15, at 83-84.

account given by Mason, [Williams'] cell-mate. Rather, [Williams] proposed to call Shepard to raise questions about Mason's veracity. . . .

. . .

. . . The only question at trial was whether [Williams] was [McLendon's] shooter. Although [Williams] attempted to establish an alibi defense, he made incriminating statements to the police; to a cell mate, Jeffrey Mason; to his godparents, Yolanda Wade and Dallas Andres, while being recorded by the surveillance video and audio; and to various other witnesses. The evidence of guilt was overwhelming, so [Williams'] inability to call to the stand two criminals who might have given testimony that perhaps could have called into question some minor details of the prosecution's case [would not have] upset the verdict.

1925(a) Op. at 9-10 (citations omitted). We conclude that the record supports the PCRA court's findings. Because Williams cannot establish prejudice, his ineffectiveness claim relating to Shepard's assertion of the Fifth Amendment privilege fails.

Next, Williams asserts that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding Graham's prior inconsistent statement given to police at the time of his arrest. At the conclusion of Graham's testimony, the trial court instructed the jury as follows:

One of the things that you need to know about witnesses is that one way of challenging their credibility is to demonstrate that they gave what is called prior inconsistent statements and in this case [defense counsel] has given – asked about statements that this witness[,] Mr. Graham[,] gave to Detective [Brian] Pitts. One of the statements was did you tell Detective Pitts that the decedent[,] Isaiah McLendon[,] was a drug dealer or was involved in drugs and he may have said that to Detective

- 9 -

> Pitts and **it was obviously inconsistent because he knew the real reason why this homicide occurred.** There's no evidence in this case that Isaiah McLendon was involved in dealing drugs and I want to make that clear to you. The reason for that testimony was not to indicate that the decedent was involved in drug dealing, but to show the inconsistent statements of the witness.

N.T., 10/15/10, at 145 (emphasis added). Williams claims that this instruction – and particularly the trial judge's comment that Graham "knew the real reason" for the murder – was prejudicial because it encouraged the jury to disbelieve Graham's initial statement to police, in which he did not implicate Williams in the murder, and to believe Graham's trial testimony that Williams was the shooter.

The trial court gave the limiting instruction to clarify that Williams was using Graham's prior inconsistent statement solely to impeach Graham, not as character evidence concerning the victim. At the PCRA hearing, Williams' trial counsel, Scott Galloway, Esquire, testified that he did not object to the instruction or ask the trial court for clarification because he did not want to open the door to character evidence concerning his client or draw further attention to the trial judge's remark. N.T., 12/9/15, at 63-66. Galloway testified as follows:

> I requested that something along the nature that the jury instruction the Judge finally gave was given because the purpose of my cross examination was to show a prior inconsistent statement. . . . I chose not to object to that [instruction] because I didn't want to, quite frankly, have the jury listen to the instruction again and think about it again. . . . As far as the one comment by the Judge, I chose not to object because I just didn't want the jury to hear it again, quite frankly.

*Id.* at 64-65. The PCRA court credited Galloway's testimony and concluded that Galloway made a reasonable, strategic decision not to challenge the trial court's instruction because he did not want to highlight the evidence. Where matters of strategy and tactics are concerned, counsel's assistance is deemed effective if the course chosen had some reasonable basis designed to effectuate his or her client's interests. *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). The record supports the PCRA court's conclusion that Galloway's reason for refraining from objecting or asking the court for a corrective instruction was "well within the bounds of reason." 1925(a) Op. at 12.[8]

Finally, Williams asserts that PCRA counsel was ineffective for failing to raise five additional meritorious issues in his amended PCRA petition. Williams identifies the five issues as follows:

> 1) Trial counsel provided ineffective assistance . . . [s]pecifically where counsel: a) Failed to object at sentencing, raise in post-sentence motion, or raise on direct appeal the court erroneously imposing an illegal sentence which is not pursuant to any statute authorizing it. b) Failed to investigate witnesses Elonda Wade & Dallas Andrews or present any evidence at [Williams'] suppression hearing rendering the outcome a foregone denial. c) Failed to request a continuance at trial, raise in post-sentence motion, or raise on direct appeal the

---

[8] *See Commonwealth v. Spotz*, 870 A.2d 822, 832 (Pa. 2005) ("Objections sometimes highlight the issue for the jury, and curative instructions always do."); *Commonwealth v. LaCava*, 666 A.2d 221, 230 (Pa. 1995) (noting that "an objection would have served only to highlight this fleeting reference which otherwise cannot be reasonably be said to have deprived appellant of a fair trial").

outrageous government misconduct regarding the presentation of inadmissible cell phone evidence at [Williams'] trial. d) [Williams] was denied due process by the combined effect of the foregoing errors of [ineffective assistance of counsel] which rendered [his] trial fundamentally unfair. 2) Prior PCRA Counsel provided ineffective assistance . . . [s]pecifically where counsel: a) Failed to, after request from [Williams], raise the claim of after-discovered evidence which is predicated upon the affidavit of witness Gregory Graham recanting his prior testimony given at [Williams'] trial.

Williams' Br. at 22. Williams, however, fails to develop any of these claims in the argument section of his brief. His only substantive argument with respect to these claims is that each "provides a showing of merit and prejudice that insued [sic] due to the error, [and] therefore, counsel had no reasonable basis for failing to raise these claims and [Williams] was prejudiced by counsel's deficient performance." *Id.* at 24.

We will not accept a petitioner's boilerplate allegations of ineffectiveness without any discussion of the three required prongs of an ineffectiveness claim. *See Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011) ("[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective."); *Commonwealth v. Steele*, 961 A.2d 786, 801-02 (Pa. 2008) (rejecting appellant's undeveloped allegations of ineffective assistance of counsel in his brief). Therefore, Williams has waived these claims of PCRA counsel's ineffectiveness.

Order affirmed.

Judge Bowes joins in the memorandum.

PJE Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/2017